FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 0 3 2005

at ___ o'clock and ___ min. __
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LISA ROMERO, | CV. NO. 04-00285 DAE-KSC |
| Plaintiff, | |
| vs. | |
| JEFFREY LOWE; LINDA LOWE; MATTHEW RAY SEVERSON; BRETT SCHELAND; BENJAMIN ALLEN WILDER; MINDY WILDER; GEORGE KLAUS, III; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |
| JEFFREY LOWE and LINDA LOWE, | |
| Third-Party Plaintiffs, | |
| vs. | |
| STEVEN J. KOTT and KOTT, INC., | |
| Third-Party Defendants. | |

EXHIBIT A

ORDER (1) GRANTING THIRD-PARTY DEFENDANTS STEVEN J. KOTT
AND KOTT INC.'S MOTION FOR SUMMARY JUDGMENT FILED 3/31/05;
ORDER (2) GRANTING IN PART AND DENYING IN PART DEFENDANT
MATTHEW RAY SEVERSON'S MOTION FOR SUMMARY JUDGMENT
FILED 3/23/05;
ORDER (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS
JEFFREY LOWE AND LINDA LOWE'S MOTION FOR SUMMARY
JUDGMENT FILED 3/7/05;
ORDER (4) GRANTING IN PART AND DENYING IN PART DEFENDANT
GEORGE KLAUS, III, AND BRETT SCHELAND'S MOTION FOR
SUMMARY JUDGMENT FILED 5/11/05

The Court heard Defendants' Motions on June 13, 2005. Mark S.

Davis, Esq., appeared at the hearing on behalf of Plaintiff; Ward F.N. Fujimoto,

Esq., appeared at the hearing on behalf of the Lowe Defendants; Joelle K.K.S.

Kane, Esq., appeared at the hearing on behalf of the Kott Defendants; Jacqueline E.

Thurston, Esq., appeared at the hearing on behalf of Defendant Severson;

Katharine M. Nohr, Esq., appeared at the hearing on behalf of Defendants Klaus

and Scheland. After reviewing the motions and the supporting and opposing

memoranda, the Court GRANTS Third-Party Defendants Steven J. Kott and Kott,

Inc.'s Motion for Summary Judgment, GRANTS IN PART AND DENIES IN

PART Defendant Matthew Severson's Motion for Summary Judgment,

GRANTS IN PART AND DENIES IN PART Defendants Jeffrey Lowe and Linda

Lowe's Motion for Summary Judgment, and GRANTS IN PART AND DENIES

ORDER (1) GRANTING THIRD PARTY DEFENDANTS STEVEN J. KOTT
AND KOTT INC.'S MOTION FOR SUMMARY JUDGMENT FILED 3/31/05;
ORDER (2) GRANTING IN PART AND DENYING IN PART DEFENDANT
MATTHEW RAY SEVERSON'S MOTION FOR SUMMARY JUDGMENT
FILED 3/23/05;
ORDER (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS
JEFFREY LOWE AND LINDA LOWE'S MOTION FOR SUMMARY
JUDGMENT FILED 3/7/05;
ORDER (4) GRANTING IN PART AND DENYING IN PART DEFENDANT
GEORGE KLAUS, III, AND BRETT SCHELAND'S MOTION FOR
SUMMARY JUDGMENT FILED 5/11/05

The Court heard Defendants' Motions on June 13, 2005. Mark S.

Davis, Esq., appeared at the hearing on behalf of Plaintiff; Ward F.N. Fujimoto,

Esq., appeared at the hearing on behalf of the Lowe Defendants; Joelle K.K.S.

Kane, Esq., appeared at the hearing on behalf of the Kott Defendants; Jacqueline E.

Thurston, Esq., appeared at the hearing on behalf of Defendant Severson;

Katharine M. Nohr, Esq., appeared at the hearing on behalf of Defendants Klaus

and Scheland. After reviewing the motions and the supporting and opposing

memoranda, the Court GRANTS Third-Party Defendants Steven J. Kott and Kott,

Inc.'s Motion for Summary Judgment, GRANTS IN PART AND DENIES IN

PART Defendant Matthew Severson's Motion for Summary Judgment,

GRANTS IN PART AND DENIES IN PART Defendants Jeffrey Lowe and Linda

Lowe's Motion for Summary Judgment, and GRANTS IN PART AND DENIES

2

IN PART Defendants George Klaus, III, and Brett Scheland's Motion for Summary Judgment.

## BACKGROUND

Plaintiff Lisa Romero has filed suit against her ex-boyfriend, Defendant Matthew Severson, his housemates – Defendants Benjamin Allen Wilder, Mindy Wilder, Brett Scheland, and George Klaus, III – as well as his landlords, Defendants Jeffrey and Linda Lowe, seeking to recover damages incurred when Plaintiff was injured in the rental property occupied by her ex-boyfriend and his co-tenants.  The Lowe Defendants have also filed a third-party complaint against Third-Party Defendants Stephen J. Kott and Kott, Inc. – the parties from whom the Lowe Defendants purchased the subject property.  The case was removed to federal court pursuant to 28 U.S.C. § 1332.

In April 2001, Defendants Matthew Severson, Benjamin Allen Wilder, Mindy Wilder, and George Klaus, III, leased a house located at 111 Hauoli Street, in Kailua, Hawaii, where the four thereafter resided.  Defendant Brett Scheland became a sub-tenant in the house during the summer of 2002.  According to the oral agreement of the tenants, Defendant Matthew Severson occupied the master bedroom of the house, which is located on the second story.  The master bedroom is connected to the living room of the house, which is located directly

3

below the master bedroom, by way of a "fireman's pole." The fireman's pole consists of a metal pole attached to the ceiling of the bedroom above and the floor of the living room below that passes through a 3-foot diameter circular hole in the floor of the master bedroom.

Defendants Severson, Klaus, Scheland, Benjamin Wilder, and Mindy Wilder rented the premises from Defendants Jeffrey and Linda Lowe. When the Lowe Defendants leased the premises to these tenants, the fireman's pole was surrounded by a metal guard rail, and could be accessed only through a gate in this railing. The lease signed by the tenants stated that the fireman's pole was a unique architectural feature and was hazardous, and that the tenants assumed the risk of using it. The Lowe Defendants additionally walked with the tenant Defendants to the site of the security gate, and explained that it must always be left closed. The lease also provided that the tenants were prohibited from making any alterations to the premises without first obtaining permission from the Lowes.

Sometime during 2002, Defendant Severson filled the opening surrounding the pole with a foam material, visually closing the hole and preventing the passage of light and sound between the rooms. The foam material would not support weight, however.

4

Later, in late October or early November of 2002, Defendant Severson removed the guard rail that surrounded the fireman's pole, so that he could fit a newly purchased desk in his bedroom. He stored the pieces of railing in a small storage shed that was accessible as a common area to all the tenants of the house, as well as the tenants of a "cottage" on the property and the Lowe Defendants. Severson states that he did not inform the Lowes, or any of his roommates, that he took this action. He states in his deposition that Defendant Scheland helped him construct his desk, and he left it positioned partially obstructing the master bathroom doorway for a few weeks prior to deciding to remove the railing.

Plaintiff is a resident of California, and at the time of the accident was the girlfriend of Defendant Severson. Plaintiff states that they were involved in a serious relationship, and planned to marry. Plaintiff stated that she had stayed at the premises during her trips to visit Defendant Severson on at least five occasions prior to the accident; some of these visits lasted up to a few weeks. Plaintiff states that prior to the day of her accident, she had noticed the fireman's pole in Defendant Severson's bedroom, but that the pole had always been surrounded by the railing. She states that Defendant Severson never informed her that the railing was gone. While she noticed that his new desk was present in the room, she

maintains that prior to the accident she never noticed that the railing had been removed.

Defendant's co-tenants likewise maintain that they did not know until after the accident that Defendant Severson had removed the railing. None of the co-tenants were present in the house during the accident.

On the afternoon of December 31, 2002, Plaintiff arrived at Honolulu International Airport and was greeted by Defendant Severson. The two traveled to the Navy Commissary and Navy Package store to purchase food and alcoholic beverages. The two then returned to Defendant Severson's residence, and proceeded to his bedroom, where they remained for approximately an hour. Plaintiff explains that she was distracted by engaging in intimate relations with Defendant Severson during this time, and that the two then dozed off. After awakening, the two went downstairs, prepared dinner, and watched a DVD.

Plaintiff states that she had a cocktail on the flight into Honolulu, and that during dinner and the DVD she consumed at least two beers and two vodka tonics. Plaintiff contends that at no time was she impaired by alcohol consumption, however.

At approximately midnight, Plaintiff and Defendant Severson returned to his bedroom, where they again engaged in intimate relations and dozed off.

At approximately 3:00 a.m. on the morning of January 1, 2003, Plaintiff awakened and arose with the intent of using the bathroom. Plaintiff did not turn on any lights, wake Defendant Severson, or use her eyeglasses or contacts. Plaintiff states that it was her habit while visiting Defendant Severson to sleep on the right side of the bed, and from this spot she was required to walk straight ahead to reach the master bathroom. However, Plaintiff states that on this evening the right side of the bed was uncomfortable and damp, so she slept on the left side. When she awakened, she walked straight ahead, as was her habit to reach the bathroom when she slept on the right side of the bed. However, as Plaintiff was actually walking on the left side of the bed, this path directed her straight into the fireman's pole.

Plaintiff fell through the open hole approximately 12 feet to the ground. She landed on her back, and suffered a burst fracture to her L1 vertebrae, among other injuries. She was taken to Straub Hospital that morning, and on January 4, she underwent a T12-L1 laminectomy to repair the injury to her lower spine. She was discharged from the hospital on January 9. She asserts that she suffers continuing and severe pain in her spinal region that limits her ability to function. She states that she has also incurred ongoing medical expenses and will continue to incur such expenses in the future.

7

The Lowe Defendants had purchased the property from Third-Party Defendant Kott and his wife in 2001. Defendant Kott made the alterations to the property himself, without first obtaining a building permit, as a fulfillment of a longtime wish to have a fireman's pole in his home. The contract of sale specified that the property was purchased in "as is" condition. The Kott Defendants additionally note that the Lowe Defendants are licensed real estate brokers.

Plaintiff filed her complaint in state court on April 2, 2004, bringing a claim for negligence and gross negligence, and a claim for per se negligence, against Defendants Matthew Severson, Benjamin Allen Wilder, Mindy Wilder, Brett Scheland, George Klaus, III, and Defendants Jeffrey and Linda Lowe. The complaint was removed to federal court on May 3, 2004. On May 4, the Lowe Defendants filed a cross-claim against Defendants Severson, Scheland, and Klaus. On May 14, the Lowe Defendants filed a third-party complaint against Third-Party Defendants Steven J. Kott and Kott, Inc. On October 12, 2004, the Kott Defendants filed a counterclaim against the Lowe Defendants.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)).  However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial.  Id. at 323.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial.  Fed. R. Civ. P. 56(e).  The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted).

9

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id. The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. Id. at 254. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. See Celotex, 477 U.S. at 322.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. Id.

## DISCUSSION

To begin, the Court finds that the height of the railing that once surrounded the fireman's pole to be irrelevant to Plaintiff's negligence claims. In Plaintiff's complaint, she asserts that the Lowe Defendants are liable for negligence per se because they breached their "non-delegable duty to comply with all applicable building and housing laws materially affecting safety, and to make all repairs and arrangements necessary to maintain the premises in habitable condition." She also asserts that the co-tenant Defendants breached their "duty to comply with all applicable building and housing laws materially affecting safety, and to make all repairs and arrangements necessary to maintain the premises in a habitable condition." In her oppositions to the various motions for summary judgment, Plaintiff elaborates that she bases this argument in part on the fact that the railing that once surrounded the fireman pole was approximately two-and-a-half inches shorter than the Uniform Building Code's requirement for guardrails in private dwellings. (Pl. Omnibus Exhibits, Ex. 4, Gill Decl. at 3-4.) Indeed, Plaintiff proffers expert testimony asserting that "[i]f she had walked into a railing that was 33.5 inches in height in the early morning hours of January 1, 2003, the railing would have struck her just below the pivot point at her hips (i.e., below her

11

center of mass), and she might very well have fallen over the railing and through the hole." (Pl. Omnibus Exhibits, Ex. 4, Gill Decl. at 4.)

Under Hawaii law, to prevail on a claim of negligence, a plaintiff must show the following four elements: (1) the defendant was bound by a duty of care, (2) the defendant breached that duty, (3) the plaintiff suffered actual injury, and (4) the defendant's breach was the legal cause of plaintiff's injury. Doe Parents No. 1 v. State, Dept. of Education, 58 P.3d 545, 597 (Haw. 2002). The Hawaii Supreme Court has held that the element of duty in a negligence action may be defined by common law or by statute. Lee v. Corregedore, 925 P.2d 324, 342 (Haw. 1996). "[T]he standard of conduct may be defined and established by a legislative enactment which lays down requirements of conduct, and provides expressly or by implication that a violation shall entail civil liability in tort." Id. (citing Restatement (Second) of Torts § 285 comment b (1965).

However, while proof of a violation of a statute or other form of legislative enactment may provide evidence of duty and breach, such a showing in no way absolves a plaintiff of his or her obligation to prove that this breach somehow caused his or her injuries. In the seminal case of Mitchell v. Branch, the Hawaii Supreme Court defined legal causation as follows:

> Under Hawaii law, to impose liability on a negligent party for an injury to another, there must be a causal connection between the negligent act and the injury. The mere co-existence of negligence and injury, or the existence of negligence prior to the injury, is not in itself sufficient to establish this necessary causal relationship. The injury must be the result of, or flow from, the negligent act before the negligent party is held liable. .... The best definition and the most workable test of proximate or legal cause so far suggested seems to be this: 'The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.'

Mitchell v. Branch, 363 P.2d 969, 973 (Haw. 1961) (internal citations omitted).

The court later explained that the first step of any inquiry under Mitchell is whether the breach was an actual cause in fact of the plaintiff's injury. McKenna v. Volkswagenwerk Aktiengesellschaft, 558 P.2d 1018, 1022 (Haw. 1977) ("The inquiry under the first arm of the Mitchell test is essentially whether the act of the defendant was a cause in fact of the plaintiff's injury. A finding of factual causation is essential to the imposition of liability, yet the inquiry must not stop with this factual determination.").

In the instant case, information regarding the alleged nonconformity of the railing to the building code is simply irrelevant. The uncontroverted facts show that Plaintiff's accident occurred when she stepped into an unguarded hole in

13

the floor of the master bedroom, and such an accident is distinguishable from the hypothetical accident that might or might not have occurred had Plaintiff struck a railing of any height.  The railing that once surrounded the fireman's pole was not an actual cause or cause in fact of Plaintiff's accident, because it was removed by Defendant Severson months earlier.  There is no allegation that the deficient height of the railing motivated Defendant to remove the railing, or any other allegation that would tie the height of the railing that once surrounded the fireman's pole to the accident that actually occurred.  As such, whether any Defendant violated the building code with respect to the guardrail's height is not relevant.  Any inquiry into whether Plaintiff "might very well have fallen over the railing," had the railing in fact still been in place, would require the fact finder to engage in impermissible speculation.

Further, Plaintiff stated firmly in her deposition testimony that if the safety rail had not been removed, she would not have fallen.  (Lowe Defs. Concise Statement of Material Facts, Ex. C, Romero Depo. at 54:11-20.)  Indeed, in Plaintiff's opposition to Defendant Severson's Motion for Summary Judgment, Plaintiff argues that "[t]he relevant inquiry here ... is whether the fireman's pole and hole constituted a known and obvious danger under the Restatement § 343A and Hawaii case law, *after the guard rail was removed*."  (Pl. Memo. in Opp'n to

14

Severson Mot. at 25 (emphasis in original).)  The Court agrees, and proceeds to examine Plaintiff's claims as to all Defendants with regard to the relevant alleged hazard – the unguarded fireman's pole and hole in the floor.

I.    <u>Third-Party Defendants Stephen J. Kott and Kott, Inc.'s Motion for Summary Judgment is GRANTED, because the Lowe Defendants are not entitled to equitable indemnity for an alleged unreasonably dangerous condition – an unguarded hole – that did not exist when the Kotts sold the premises to the Lowes.</u>

Third-Party Defendants Stephen J. Kott and Kott, Inc., argue in their motion for summary judgment that they cannot be held liable for any damages caused by the fireman's pole, because after selling the property "as is" to the Lowe Defendants they no longer owned the property or controlled it in any way.  They assert that under the standard embodied in the Restatement (Second) of Torts and adopted by the California Supreme Court in <u>Preston v. Goldman</u>, 42 Cal.3d 108 (1986), a seller of real property is not liable for damage caused by dangerous conditions existing at the time the seller transfers possession to the buyer, unless such dangerous condition was both known to the seller and undisclosed to the buyer.  Third-Party Defendants contend that the Lowe Defendants were made aware of the existence of the fireman's pole prior to their purchase of the property, and therefore no exception would apply to create liability for the Kotts.

15

In their opposition, the Lowe Defendants assert that Third-Party Defendants would not be liable in the event that the Lowe Defendants' motion for summary judgment is granted. However, to the extent the Lowe Defendants' motion for summary judgment is unsuccessful, they argue that Third-Party Defendants were professional contractors who built the firepole/hole and, pursuant to Messier v. Association of Apartment Owners of Mt. Terrace, 735 P.2d 939 (1987), would be liable under principles of equitable/tort indemnity for negligence in building the firepole/hole. In Messier, the Hawaii Intermediate Court of Appeals held that a condominium developer/owner was entitled to equitable indemnity from a construction contractor for claims against the developer/owner due to a plaintiff's injuries from a loose roofing panel. The Lowe Defendants also cite Sweeney v. Stone, 265 Cal. App. 2d 693, 695-96 (1968), in which the California Court of Appeal held that the Restatement (Second) of Torts § 352 did not apply where the liability of the predecessor owner was that of a contractor who has built a house on unstable ground and who has later sold the house to an innocent third party that sustained damage because of the defective condition of the property.

16

Third-Party Defendants argue in response that <u>Messier</u> and <u>Sweeney</u> are distinguishable, because they involve latent defects caused by the predecessor and unknown to the plaintiffs.

The Court agrees with Third-Party Defendants that the cases cited by the Lowe Defendants are factually distinguishable. Moreover, these principles are simply inapplicable to the case at hand. As the Court explained above, the alleged unreasonably dangerous condition properly at issue in this case is not the original, gated firepole, but rather the unguarded hole left when Defendant Severson removed the gate. This condition was not created by Third-Party Defendants, and did not exist on the property when they sold it to the Lowe Defendants. After the sale they retained no control over the property, and were not in a position to create or remedy any conditions thereon. Therefore, Third-Party Defendants' Motion for Summary Judgment is GRANTED.

II.    <u>Defendant Severson's Motion for Summary Judgment is GRANTED IN PART as regards to punitive damages, but DENIED IN PART because material issues of fact remain as to whether he is liable for breaching a duty of care owed to Plaintiff.</u>

Under Hawaii law, a possessor or occupier of property owes a duty to all persons who use that property to either warn the users of, or to take steps to eliminate, any conditions on the land that the possessor knows or should have

17

known to pose an unreasonable risk of harm. Corbett v. Association of Apartment Owners of Wailua Bayview Apartments, 772 P.2d 693, 695 ("A possessor of land who knows or should have known of an unreasonable risk of harm posed to persons using the land, by a condition on the land, owes a duty to persons using the land to take reasonable steps to eliminate the unreasonable risk, or warn others against it.").

The undisputed facts in this case show that Defendant Severson, as the lessee who occupied the master bedroom, was a possessor of the property at issue. He obscured the opening in the floor with a foam material, and then subsequently removed the guardrail, leaving the opening in the floor completely exposed but less easily detected. Such actions obviously create a great and unreasonable risk of harm to others. Given this, Defendant Severson owed a duty of care to others entering the room to either take reasonable steps to eliminate the risk or warn them of the danger.

Defendant Severson argues, however, that the opening in the floor was so open and obvious that Plaintiff either knew or should have known of its existence, therefore negating any duty to warn. Further, Defendant argues that Plaintiff knew of the risk, and assumed the risk of injury, after deciding to sleep in the master bedroom and move about in the dark despite knowing of its unguarded

18

hole.  See West v. Tan, 322 F.2d 924, 927 (9th Cir. 1963) (applying Hawaii law to

hold that a plaintiff who voluntarily ascended a high, dark step to a platform and

then attempted, without the ability to see the step and without seeking assistance,

to descend the step had assumed the attendant risk of falling).  Plaintiff repeatedly

counters in her sworn declaration and deposition testimony that she was not

informed prior to her accident by Defendant Severson or anyone else that the

railing had been removed, nor did she notice its absence or acquire knowledge of

that fact through any other means.  (Pl. Omnibus Exhibits, Ex. 1, Romero Decl. at

¶¶ 5-6; Ex. 18, Romero Depo. at 82:22-24.)  At the summary judgment stage, this

Court may not make credibility determinations or weigh conflicting evidence.

Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).  Because the fact finder will

be required to weigh conflicting evidence to determine whether the removal of the

railing was obvious under the circumstances, and make credibility determinations

as to whether Defendant Severson informed Plaintiff of its absence, summary

judgment is not appropriate as to these claims.  Therefore, Defendant Severson's

Motion for Summary Judgment is DENIED IN PART.

However, the Court does not find any evidence in the record to raise a

genuine issue of material fact regarding Defendant Severson's liability for punitive

damages.  The Hawaii Supreme Court articulates the state's heightened standard

for punitive damages in <u>Masaki v. General Motors Corp.</u>, 71 Haw. 1, 780 P.2d 566

(1989).  The court stated:

> Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future. Thus, the practice of awarding punitive damages is an exception to the general rule that damages are aimed at compensating the victim for his injuries.
>
> Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate. Thus, where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award punitive damages.

71 Haw. at 6, 780 P.2d at 570.  In explaining the evolution of punitive damages

law in Hawaii, the <u>Masaki</u> court cited <u>Bright v. Quinn,</u> 20 Haw. 504, 511 (1911), in

which the court declared that "while the propriety of the doctrine has been

questioned, it is now too well established to admit of argument that in actions of

tort punitive damages may, under certain circumstances, be awarded in addition to

such sum as the plaintiff may be found entitled to purely by way of compensation

for his injuries and suffering."  Quoting <u>Bright</u>, the <u>Masaki</u> court explained that

"[s]uch damages may be awarded in cases where the defendant has acted wantonly

or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations; or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." 71 Haw. at 10-11, 780 P.2d at 572 (internal citations omitted). The court stated that the inquiry to determine whether an award of punitive damages is appropriate focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his conduct. "[T]o justify an award of punitive damages, a positive element of conscious wrongdoing is always required. Thus, punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. Something more than the mere commission of a tort is always required for punitive damages." 71 Haw. at 7, 780 P.2d at 570-71 (internal quotation marks and citations omitted).

The Court finds no evidence in the record that would, even if taken in the light most favorable to Plaintiff, support an award of punitive damages against Defendant Severson. Neither party has made any showing that Severson acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. Moreover, there has been no showing that Severson has committed any wilful misconduct, or exhibited an entire want of care so severe as to raise a presumption of that he was consciously indifferent to

consequences of his actions.  As such, Defendant Severson's motion is GRANTED

IN PART as to punitive damages.

III.    The Lowe Defendants' Motion for Summary Judgment is GRANTED
IN PART as regards to punitive damages, but DENIED IN PART
because Plaintiff has raised genuine issues of material fact regarding
whether the Lowe Defendants knew or should have known of the
unguarded hole.

As explained above, an owner or possessor of land who knows or

should have known of an unreasonable risk of harm posed to persons using the

land, by a condition on the land, owes a duty to persons using the land to take

reasonable steps to eliminate the unreasonable risk, or warn others against it.  See

Crichfield v. Grand Wailea Co., 6 P.3d 349, 361 (Haw. 2000) (applying rule of

Corbett to "all landowners"); Richardson v. Sport Shinko Waikiki Corp., 880 P.2d

169, 178 (1994).  Further, as the Court has already found, a condition existed on

the property at issue in this case – namely, the unguarded and obscured hole in the

master bedroom floor – which posed an unreasonable risk of harm to persons using

the property.  If the Lowe Defendants knew or should have known that such an

unreasonable risk existed on the property, then they had a duty to take reasonable

steps to eliminate the risk or warn users against it.  If, taking the facts in the light

most favorable to Plaintiff, she can show that the Lowe Defendants breached this

duty of care, and this breach was the legal cause of her injuries, then she has successfully stated a claim for negligence against them.

Plaintiff presents two main arguments seeking to establish liability on the part of the Lowes for the hazard created by the unguarded, obscured fireman's pole. First, Plaintiff argues that the Lowes should have foreseen that their tenant would alter the fireman's pole in this manner. Second, Plaintiff argues that actual knowledge of the alteration may be inferred based both on the Lowes' rights as landlord to reenter the property under certain circumstances and the Lowes' right of access to the storage area where Defendant Severson stored the disassembled railing.

In support of these arguments, Plaintiff submits deposition testimony in support of the following facts: (1) Defendant Severson removed the guard rail from around the fireman's pole in early November 2002; (2) after its removal, the guardrail was stored until the time of the accident in a storage shed, which the Lowe Defendants had the ability to access and used for storage; (3) Jeffrey Lowe visited the property regularly, for an average of once a month. (Pl. Concise Statement of Facts in Opp'n, Ex. 19 at 123-132, Ex. 19 at 215-216, Ex. 24 at 37-38.)

As explained above, a genuine issue of material fact exists if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. In the instant case, although the Court does not find that the facts alleged would create a particularly strong case for liability on the part of the Lowe Defendants, Plaintiff has alleged facts sufficient to support an inference that the Lowes knew or should have known that the railing around the fireman's pole had been removed. Therefore, the Lowe Defendants' Motion for Summary Judgment is DENIED IN PART.

However, the Court also finds no evidence in the record that would, even if taken in the light most favorable to Plaintiff, support an award of punitive damages against the Lowe Defendants. Plaintiff has made no showing that the Lowe Defendants acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. Moreover, there has been no showing that the Lowe Defendants have committed any wilful misconduct, or exhibited an entire want of care so severe as to raise a presumption of that they were consciously indifferent to consequences of their actions. As such, the Lowe Defendants' motion is GRANTED IN PART as to punitive damages.

IV.    Defendants Klaus and Scheland's Motion for Summary Judgment is
       GRANTED IN PART as regards to punitive damages, but DENIED
       IN PART because Plaintiff has raised genuine issues of material fact
       regarding whether Defendants Klaus and Scheland jointly possessed
       the full premises with Defendant Severson and knew or should have
       known of the unguarded hole.

Defendants Klaus and Scheland argue in their motion for summary

judgment that as Defendant Severson's co-tenants they had no control over or

possession of Defendant Severson's private bedroom.  Plaintiff counters that the

co-tenants must be held jointly and severally liable for the condition of the entire

property.  This case presents what is apparently a matter of first impression in

Hawaii.  However, the Court finds the New York Court of Appeal's treatment of

this issue in Butler v. Rafferty, 792 N.E.2d 1055 (2003) – a case that has been cited

by both Plaintiff and Defendants – to be persuasive.  In Butler, a pair of siblings

purchased a property as "co-tenants," but entered into a written agreement stating

that they "would reside separately on the premises in areas they identified to each

other," and that they would "live free from interference in the personal lives and

affairs of [one another]" and "reside with or cohabit with whomever they choose."

Id. at 1057.  The Butler court explained:

> For purposes of imposing personal liability for defective
> conditions on the premises, a cotenant's right to use and
> enjoy the entire premises translates into a duty to maintain
> it safely.  Indeed, because the common law doctrine of

25

tenancy-in-common presumptively gives the cotenant full
possession of the entire premises, a defective condition
causing injury to a third person results in joint and several
liability as to each cotenant.

Id. at 1058. However, the court also found that co-tenants could contract out of

this presumption of full possession. Id. The court therefore gave effect to the

agreement between the siblings, and found that one was not liable for conditions

within the other's sphere of exclusive control, as the agreement "created the

functional equivalent of separate apartments." Id. at 1057.

In the instant case, this Court agrees that, as Defendants Klaus and

Scheland possessed the property jointly with Defendant Severson, they would

jointly under Hawaii's rule of Corbett owe a duty to all persons who use that

property to either warn the users of, or to take steps to eliminate, any conditions on

the land that they knew or should have known to pose an unreasonable risk of

harm. See Corbett, 772 P.2d at 695 ("A possessor of land who knows or should

have known of an unreasonable risk of harm posed to persons using the land, by a

condition on the land, owes a duty to persons using the land to take reasonable

steps to eliminate the unreasonable risk, or warn others against it."). However, the

Court also agrees that Defendants could have modified this duty by agreement.

In the instant case, Plaintiff brings forth her deposition testimony in which she asserts that she knew the tenants to jointly enjoy full use of all of the property, including each other's bedrooms. (Pl. Opp'n, Ex. 18.) Defendants Klaus and Scheland, on the other hand, bring forth the deposition testimony of Defendant Severson in support of the proposition that the co-tenants had agreed Defendant Severson privately occupied the master bedrooom, and therefore had exclusive possession and control of the master bedroom, while Defendants Klaus and Scheland exclusively occupied their own bedrooms, and that the only shared areas of the house were the common areas. (Def. Klaus and Scheland Concise Statement of Facts, Ex. C.)

If the fact finder finds that an agreement in fact existed between the Defendants apportioning control of the apartment, then they may find that Defendants Klaus and Scheland are not liable for the condition that existed in Defendant Severson's bedroom. However, at this stage the Court cannot engage in a weighing of competing evidence or comparative fault. Because Plaintiff has brought forth sufficient facts to support an inference that Defendants Klaus and Scheland jointly possessed the entire premises with Defendant Severson, and that Klaus and Scheland knew or should have known that the railing had been removed,

leaving an unguarded and dangerous hole in the floor, Defendants Klaus and Scheland's motion for summary judgment must be DENIED IN PART.

But, as with the other Defendants, the Court finds no evidence in the record that would, if taken in the light most favorable to Plaintiff, support an award of punitive damages against Defendants Klaus and Scheland. Plaintiff has made no showing that the Lowe Defendants acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. Moreover, there has been no showing that Defendants Klaus and Scheland have committed any wilful misconduct, or exhibited an entire want of care so severe as to raise a presumption of that they were consciously indifferent to consequences of their actions. As such, Defendants Klaus and Scheland's motion is GRANTED IN PART as to punitive damages.

CONCLUSION

For the reasons stated above, the Court GRANTS Third-Party Defendants Steven J. Kott and Kott, Inc.'s Motion for Summary Judgment, GRANTS IN PART AND DENIES IN PART Defendant Matthew Severson's Motion for Summary Judgment, GRANTS IN PART AND DENIES IN PART Defendants Jeffrey Lowe and Linda Lowe's Motion for Summary Judgment, and

28

GRANTS IN PART AND DENIES IN PART Defendants George Klaus, III, and

Brett Scheland's Motion for Summary Judgment.

          IT IS SO ORDERED.

          DATED:  Honolulu, Hawaii, _____3 NOV 2005_____.

          DAVID ALAN EZRA
          CHIEF UNITED STATES DISTRICT JUDGE

Lisa Romero v. Jeffrey Lowe, et al., CV. NO. 04-00285 DAE-KSC; ORDER (1) GRANTING THIRD-PARTY DEFENDANTS STEVEN J. KOTT AND KOTT INC.'S MOTION FOR SUMMARY JUDGMENT FILED 3/31/05; ORDER (2) GRANTING IN PART AND DENYING IN PART DEFENDANT MATTHEW RAY SEVERSON'S MOTION FOR SUMMARY JUDGMENT FILED 3/23/05; ORDER (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS JEFFREY LOWE AND LINDA LOWE'S MOTION FOR SUMMARY JUDGMENT FILED 3/7/05; ORDER (4) GRANTING IN PART AND DENYING IN PART DEFENDANT GEORGE KLAUS, III, AND BRETT SCHELAND'S MOTION FOR SUMMARY JUDGMENT FILED 5/11/05