Jack P. Suyderhoud, Ph.D.
*Economist*
7149 Kukii Street
Honolulu, Hawaii 96825
Phone 808-342-6226; Fax 808-395-1876

January 16, 2006

Ward F.N. Fujimoto
Attorney at Law
Mauka Tower, Suite 1400
737 Bishop Street
Honolulu, Hawaii 96813-2979

Via Fax: 599-2979

Re: <u>Romero v. Lowe (Civil No. 04-00285-DAE-BMK)</u>

Dear Mr. Fujimoto:

Your office retained me on December 6, 2005, to provide expert economic opinions with regard to the case cited above. This constitutes my report on this case. Please note that my opinions may change if additional information is provided.

## I. SCOPE OF THIS REPORT:

I have been asked to comment on the economic loss claim of plaintiff Lisa Romero and specifically the report by plaintiff's expert, Joanna Moss, Ph.D. I have also been asked to make an independent calculation of damages.

## II. DOCUMENTS REVIEWED FOR THIS REPORT:

My comments are based on my review of the following relevant documents that were provided to me by your office:
1. Confidential life care plan prepared by Glenda Evan-Shaw, December 30, 2004, with handwritten changes, produced during her deposition on January 11, 2006.
2. Report of Thomas Yankowski, vocational expert, dated January 5, 2005.
3. Report by Thomas Yankowski, vocational expert, dated December 20, 2005.
4. Deposition of Lisa Romero, Volumes I and II taken on January 10 and 11, 2005, including exhibits.
5. Report by Joanna Moss, Ph.D., economist, dated 1/11/05.
6. Report by Joanna Moss, Ph.D., economist, dated 1/6/06.

In addition, I have reviewed publicly available documents that are cited in my report below.

## III. COMMENTS ON DR. MOSS' REPORT:


EXHIBIT A

1

Dr. Moss prepared two reports, as listed above. Since the later report supercedes the earlier one, I will limit my comments to the report of January 6, 2006. Dr. Moss presents calculations in two areas of damages: present value of lost earnings and present value of future medically-related expenses.

**A. Comments on Dr. Moss' Calculations of Earnings Loss:**

Dr. Moss makes two sets of calculations of earnings loss, with two calculations in each set. The first set assumes that Dr. Romero's income is limited to two part time jobs as set forth in Mr. Yankowski's report. The second assumes Dr. Romero's earnings are limited to what she makes in her initial post-degree job at the Centers for Disease Control. (See page 1 of Dr. Moss' report.)

*1. Worklife Expectancy:*

In both sets, Dr. Moss presents two calculations of damages. One assumes that Dr. Romero would have a statistically normal worklife expectancy and one that she would have worked to age 65, with certainty. (See page 1 of the Moss report.) That latter approach results in a higher present value. I believe that the latter approach should be disregarded by the finder of fact as being outside the realm of reasonable economic probability.

Reasonable economic probability is the standard of evidence for the economic expert's testimony. As such, economic calculations should reflect outcomes that are more likely than not. By assuming that Dr. Romero would work to age 65 with certainty, Dr. Moss is ignoring the statistical likelihood that Dr. Romero may not work to that age due to illness, work transition, life-style choices and normal mortality patterns. This is why economists use worklife tables.

Worklife tables indicate that women of Dr. Romero's age, active in the labor force, and with graduate degrees work on average to age 61.3 (or late 2032). (See Skoog and Cieka, *Journal of Legal Economics*, Spring/Summer 2001, p. 70.) This is the reasonable figure to use.

However, Dr. Moss's statistical worklife is to 2034. Thus, even her use of the statistical norm seems to be on the high side.

*For the reasons noted above, I believe that the calculations to age 65 should be ignored by the finder of fact.* I will limit my remaining comments to the calculation of earnings loss assuming statistical worklife expectancy.

*2. Past Earnings Loss:*

Dr. Moss assumes part of the loss of earnings is due to Dr. Romero being forced to delay her degree due to the injury. The allegation is that Dr. Romero should have earned her degree in 2004, but she did not finish until 2005. Of course, the finder of fact will have

2

to be satisfied that any delay in graduation was due to the accident and not to unrelated matters. The finder of fact should know the following:
- In my experience there is a great variation among doctoral students in how long they take to complete their degrees. It is not unusual for a student to take longer than initially expected.
- While Dr. Romero was pursuing her degree (both before and after the accident that is the cause of this action), she traveled frequently away from her university for social reasons.
- Dr. Romero had issues in her personal relationships that may have distracted from her progress to the degree and that the finder of fact may determine were unrelated to the accident.
- If the finder of fact determines that the delay in graduation was not related to the accident or that it was not as long as alleged, then the loss as calculated by Dr. Moss would be reduced by $60 thousand.

### 3. Assumptions of On-going Earnings Loss Due to Injury:

The calculations of on-going loss are based on the assumption that absent the injury Dr. Romero would have had a starting salary of $96,000 per year increasing to $111,110 in three years. (See page 5 of the Moss report.) These are based on the labor market search results of Mr. Yankowski as presented in his first report.

In order for this part of the calculation to be correct, the finder of fact will have to accept Mr. Yankowski's assessment. However, it is also possible that Mr. Yankowski is wrong about the earnings absent the injury for the following reasons:
- Dr. Romero never had or was offered the jobs that Mr. Yankowski claims she could have had. That is to say, the jobs she allegedly could have had are only the result of Mr. Yankowksi's or his sources' estimates of what *may* have happened.
- There is no evidence (among the records that I have) that Dr. Romero was turned down for certain types of jobs that she could have had.
- There is no independent evidence that the injury caused Dr. Romero not to seek employment in certain types of jobs. Mr. Yankowski's second report indicates that Dr. Romero herself decided not to apply for certain types of jobs.
- There is no independent evidence that Dr. Romero's present job with the Centers for Disease Control is any better or worse than she would have had access to had the accident not occurred.
- In his report, Mr. Yankowski initially concluded that Dr. Romero was limited to at most part-time work. However, Dr. Romero has a full-time job at earnings that are higher than assumed by Mr. Yankowski in his initial report. Thus we know he was wrong about that part of his assumptions.

Dr. Moss makes two earnings loss calculations. One of these assumes that Dr. Romero will keep her present job for only one year and then be limited only to two part-time jobs. We have no evidence other than the speculation of the plaintiff that she will have to give up her present job. If the finder of fact determines that the cause of this action provides no reason for her to give up her existing job, then this calculation is irrelevant.

3

Dr. Moss' second calculation assumes that Dr. Romero's earnings are limited to her present position. (See page 2 of the Moss report.) Specifically, Dr. Moss assumes a starting salary of $73,421 increasing to at most $80,762 after three years. (See page 5 of her report.) This is an increase of only 10%. The apparent reason cited for limiting the increase to this amount is the over-time and stress associated with higher-paying positions within CDC. (See the second Yankowski report at page 5.) Again, these are self-created perceptions by the plaintiff.

There are reasons to suspect that Dr. Romero's salary may grow beyond the 10% assumed increase:
- Mr. Yankowski notes that professionals in the jobs that she was trained for and had experience in earned started at $96,000 and grew to $111,110 per year as noted by Dr. Moss on page 5. This is a 15.7% increase.
- U.S. Census data of incomes for women with doctoral degrees shows average earnings growing by 34% between ages 35-39 and 40-44. (Source: US Census, *Current Population Survey, 2004 Annual Social and Economic Supplement*, P-30-226, Table PINC-04.)
- The salary scale included in Mr. Yankowski's second report shows the pay scale for Dr. Romero's position starts at $73,421 but increase to $95,446.

Thus, to accept Dr. Moss' calculation, the finder of fact will have to conclude that the accident has indeed limited her earnings growth to only 10%.

### *4. Other Issues with Dr. Moss' Calculations:*

I have the following comments on more technical aspects of Dr. Moss's calculations.

First, Dr. Moss ignores income taxes in the calculation. Normal practice in Hawaii as set forth in Section 663-.3, Hawaii Revised Statutes require income taxes be taken into consideration. The impact of this is quite significant since this calculation of damages involves the loss of income at the margin, and thus the relevant marginal (Federal and state) income tax rates apply. Ignoring such taxes has the effect of overstating the loss calculation.

Second, Dr. Moss states on page 5 of her report that the fringe benefits received by Dr. Romero at the Centers for Disease Control are 33%. However, Dr. Moss assumes only 23% since the 33% figure "likely includes legally mandated benefits of about 10% of earnings which would be available in both jobs." It is not clear to me why such legally mandated benefits should not be counted.

Third, I have no significant issue with Dr. Moss' net discount rate of 2.0%. I think this is in line with the profession. (Source: Brookshire, Luthy and Slesnick, "Forensic Economists: Their Methods and Estimates of Forecast Variables: A 2003 Survey Study," *Litigation Economics Review*, 6 (2), Summer 2004, p. 31.) She derives the net discount rate of 2.0% by assuming a 3.5% wage growth rate and a 5.5% interest rate for discounting. It would be appropriate for her to explain these choices.

4

### *5. Summary of Opinion Regarding Dr. Moss' Earnings Loss Calculation:*

In total, Dr. Moss presents four earnings loss estimates ranging from $818,153 to $1,214,549. (See page 1 of her report.) I think that finder of fact should disregard three of the four.

Two of the four apply to the assumption that Dr. Moss will work to age 65 with certainty. This fails the test of reasonable economic probability. The third assumes that Dr. Romero cannot work full-time. This has been contradicted by reality.

The remaining calculation assumes that Dr. Romero can work full-time and do so for a statistical worklife expectancy. This is the loss of $818,153 as calculated by Dr. Moss. However, even this calculation is overstated for the following reasons:
- Dr. Moss fails to deduct income taxes.
- Dr. Moss understates the fringe benefits from working at CDC.
- Dr. Moss overstates the worklife expectancy by about a year and thus extends the loss.
- There is a possibility that Dr. Romero would have graduated later than planned even absent the accident.

I have provided the finder of fact with my independent calculation of earnings loss below.

### B. Dr. Moss' Calculation of the Lifecare Plan Costs:

Dr. Moss calculates the lifecare plan costs set forth in the report by Glenda Evan-Shaw, dated December 30, 2004. This has two aspects: "totals for future damages" and "possible future treatments, needs/complications". (See the other page 1 Dr. Moss's report as it relates to the life care plan.) The former has a calculated present value of $758,779 and the latter $114,124.

### *1. Comments on the "Totals for Future Damages":*

This portion of the lifecare plan costs consists of eight parts. I have the following comments on Dr. Moss' calculations:
1. The finder of fact will have to be satisfied that the costs items set forth by Ms. Evans-Shaw are reasonable and medically necessary.
2. Since Ms. Evans-Shaw changed some of these as disclosed in her deposition, the calculations by Dr. Moss will have to change.
3. I have no independent expert judgment about the medical costs. As with most economists, I take these at face value from the lifecare plan expert. However, I do question part VIII, "housekeeping and yard service". Dr. Moss carries this loss forward until Dr. Romero would be age 81. I think it is fair to say that in the last 10 years of life, Dr. Romero would have required "housekeeping and yard service" help even if the accident had not occurred.

5

*2. Comments on the "Possible Treatments, Needs/Complications":*

Apparently, these costs are reported separately by Ms. Evans-Shaw because they are only "possible" and not probable. Some of the cost items have a very wide range (e.g., "Gyn/Ob"). Other costs are speculative.

Given the uncertainty that these expenses will be incurred, and the uncertainty of their timing, and the uncertainty of the amounts, it is not economically reasonable to include these.

*3. Effects of Changes Made by Ms. Evans-Shaw:*

As noted above, Ms. Evans-Shaw made some changes in the lifecare plan cost components. Using the same inflation and interest rate assumptions as Dr. Moss, I calculate that the effect of these changes is to reduce the total plan present value costs by about $5,000.

*4. Summary of Comments on Lifecare Plan Costs:*

In order for the lifecare plan costs to be accepted by the finder of fact, they must be judged reasonable and medically necessary. The costs set forth by Ms. Evans-Shaw have a present value that is $5,000 less than calculated by Dr. Moss. If we also eliminate the last 10 years of the housekeeping costs, then the lifecare plan costs are reduced by another $25,000, in present value. The "possible" costs cannot be calculated with any precision by the economist.

## IV. ALTERNATIVE CALCULATION OF DAMAGES:

I have provided the finder of fact with two alternative loss calculations. The first uses Dr. Moss' framework and assumptions. For the second, I take the earnings information for an academic position as provided by Dr. Minkler in the first Yankowski report, as for a source most familiar with Dr. Romero's skills and employability.

### A. Alternative Calculation Using Moss Assumptions:

I have taken Dr. Moss' assumptions about what Dr. Romero could have made absent the injury. (See page 4 of the Moss income loss calculation.) I have also used Dr. Moss' assumptions about what Dr. Romero can earn in her position at CDC with no promotion beyond that. (Again, see page 4 of the Moss income loss report.) I have also used Dr. Moss' assumptions for inflation and interest rates. (See the top of the attached page A for the assumptions and columns 2 and 3 for the earnings assumed.)

I have made the following adjustments to the assumptions set forth by Dr. Moss:
- I have reduced the worklife expectancy to age 61.8 (or to the end of 2032.) See my comment above.) (See column 1 in the attached page A.)

6

- I have removed the fringe benefit levels assumed by Dr. Moss from the earnings. (See columns 4 and 5 of page A.)
- I then calculate the lost earnings at the margin. This is shown in column 6 of page A and is equal to column 4 minus column 5.
- I subtracted Federal and Georgia income taxes at the relevant marginal rates of 25% and 6% respectively. (See 7 of page A.)
- I have added back only lost retirement fringe benefits at a rate of 7% of earnings. (See column 8 of page A.) The reason for this is as follows:
- No medical benefits are lost since Dr. Romero is employed, with Federal benefits.
- No legally mandated employer contributions are lost since Dr. Romero is employed.
- No vacation and holiday pay is lost since Dr. Romero is employed.
- The only fringes lost are those for employer payments to retirement that are reduced due to lower income. I determine these to be 7% of earnings reduction. (See the top of page A for the source.)

The result of these assumptions and calculations is a loss that has a present value of **$635,041**, as indicated on the bottom of page A.

**B. Alternative Calculation Using Dr. Minkler's Earnings Assessment:**

In Mr. Yankowski's first report (at page 6), Dr. Minkler is cited as opining that absent the injury Dr. Romero could have obtained an academic job starting "$70-80,000 per year, increasing to $100,000 per year after three years." I have used these figures along with the same assumptions noted above for my first alternative calculation.

Page B, attached, shows the calculations. The present value of the compensation loss given these assumptions is **$341,936**. (See the bottom of page B.)

**V. CONCLUSION:**

I hold my opinions expressed above to a reasonable degree of economic probability. I am solely responsible for the preparations of these opinions. Should additional information be provided to me, my opinions may change.

Respectfully,

Jack P. Suyderhoud, Ph.D.

**Assumptions:**

| | | |
|---|---|---|
| Earnings: | same as Moss | |
| Federal marginal tax rate: | 25.0% | Source: IRS, 2005 Rate Schedule |
| Georgia marginal tax rate: | 6.0% | Source: Georgia Dept of Rev, IT-511 Instructions, 2005 |
| Lost fringe benefits: | 7.0% | Source: BLS, Employer Cost for Employee Compensation Summary, Dec. 9, 2005 |
| Interest rate for discounting: | 5.5% | Same as Moss |
| After-tax discount rate: | 4.1% | Subtracting Federal income tax rate from interest earnings |

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|
| | Includes Fringe | | Not-Including Fringe | | | | | | |
| Year | Pre-Injury Earnings | Post-Injury Earnings | Pre-Injury Earnings | Post-Injury Earnings | Lost Earnings | Less Inc Tax | Plus Lost Fringe | Aft-tax Lost Compens | Pres Val Lost Comp |
| 2004 | 38,240 | 0 | 32,000 | - | 32,000 | 9,920 | 2,240 | 24,320 | 24,320 |
| 2005 | 120,571 | 67,308 | 100,896 | 54,722 | 46,174 | 14,314 | 3,232 | 35,092 | 35,092 |
| 2006 | 124,791 | 93,469 | 104,428 | 75,991 | 28,437 | 8,815 | 1,991 | 21,612 | 20,756 |
| 2007 | 135,745 | 95,932 | 113,594 | 81,246 | 32,349 | 10,028 | 2,264 | 24,585 | 22,676 |
| 2008 | 147,662 | 106,843 | 123,567 | 86,864 | 36,702 | 11,378 | 2,569 | 27,894 | 24,708 |
| 2009 | 152,830 | 114,232 | 127,891 | 92,872 | 35,020 | 10,856 | 2,451 | 26,615 | 22,642 |
| 2010 | 158,179 | 118,230 | 132,368 | 96,122 | 36,246 | 11,236 | 2,537 | 27,547 | 22,506 |
| 2011 | 163,715 | 122,368 | 137,000 | 99,486 | 37,514 | 11,629 | 2,626 | 28,511 | 22,371 |
| 2012 | 169,446 | 126,651 | 141,795 | 102,968 | 38,827 | 12,036 | 2,718 | 29,509 | 22,236 |
| 2013 | 175,376 | 131,084 | 146,758 | 106,572 | 40,186 | 12,458 | 2,813 | 30,541 | 22,103 |
| 2014 | 181,514 | 135,672 | 151,895 | 110,302 | 41,593 | 12,894 | 2,911 | 31,610 | 21,970 |
| 2015 | 187,867 | 140,420 | 157,211 | 114,163 | 43,048 | 13,345 | 3,013 | 32,717 | 21,838 |
| 2016 | 194,443 | 145,335 | 162,714 | 118,159 | 44,555 | 13,812 | 3,119 | 33,862 | 21,707 |
| 2017 | 201,248 | 150,422 | 168,408 | 122,294 | 46,114 | 14,295 | 3,228 | 35,047 | 21,577 |
| 2018 | 208,292 | 155,686 | 174,303 | 126,574 | 47,728 | 14,796 | 3,341 | 36,274 | 21,447 |
| 2019 | 215,582 | 161,136 | 180,403 | 131,004 | 49,399 | 15,314 | 3,458 | 37,543 | 21,319 |
| 2020 | 223,127 | 166,775 | 186,718 | 135,590 | 51,128 | 15,850 | 3,579 | 38,857 | 21,191 |
| 2021 | 230,937 | 172,612 | 193,253 | 140,335 | 52,917 | 16,404 | 3,704 | 40,217 | 21,064 |
| 2022 | 239,020 | 178,654 | 200,016 | 145,247 | 54,769 | 16,979 | 3,834 | 41,625 | 20,937 |
| 2023 | 247,385 | 184,907 | 207,017 | 150,331 | 56,686 | 17,573 | 3,968 | 43,082 | 20,811 |
| 2024 | 256,044 | 191,378 | 214,263 | 155,592 | 58,670 | 18,188 | 4,107 | 44,590 | 20,687 |
| 2025 | 265,005 | 198,077 | 221,762 | 161,038 | 60,724 | 18,824 | 4,251 | 46,150 | 20,562 |
| 2026 | 274,281 | 205,009 | 229,523 | 166,674 | 62,849 | 19,483 | 4,399 | 47,765 | 20,439 |
| 2027 | 283,880 | 212,185 | 237,557 | 172,508 | 65,049 | 20,165 | 4,553 | 49,437 | 20,316 |
| 2028 | 293,816 | 219,611 | 245,871 | 178,546 | 67,326 | 20,871 | 4,713 | 51,167 | 20,194 |
| 2029 | 304,100 | 227,298 | 254,477 | 184,795 | 69,682 | 21,601 | 4,878 | 52,958 | 20,073 |
| 2030 | 314,743 | 235,253 | 263,383 | 191,263 | 72,121 | 22,357 | 5,048 | 54,812 | 19,953 |
| 2031 | 325,759 | 243,487 | 272,602 | 197,957 | 74,645 | 23,140 | 5,225 | 56,730 | 19,833 |
| 2032 | 337,161 | 252,009 | 282,143 | 204,835 | 77,258 | 23,950 | 5,408 | 58,716 | 19,714 |
| | | | | | | | | Total | 635,041 |

Assumptions:                    Dr. Minkler, academic job
Earnings:
Federal marginal tax rate:       25.0%  Source: IRS, 2005 Rate Schedule
Georgia marginal tax rate:        6.0%  Source: Georgia Dept of Rev, IT-511 Instructions, 2005
Lost fringe benefits:             7.0%  Source: B_S. Employer Cost for Employee Compensation Summary, Dec. 9, 2005
Interest rate for discounting:    5.5%  Same as Moss
After-tax discount rate:          4.1%  Subtracting Federal income tax rate from interest earnings

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|
|   | Includes Fringe | | Not-including Fringe | | | | | | |
| Year | Pre-Injury Earnings | Post-Injury Earnings | Pre-Injury Earnings | Post-Injury Earnings | Lost Earnings | Less Inc Tax | Plus Lost Fringe | Aft-tax Lost Compens | Pres Val Lost Comp |
| 2004 | 37,344 | 0 | 31,250 | - | 31,250 | 9,688 | 2,188 | 23,750 | 23,750 |
| 2005 | 100,183 | 67,308 | 83,835 | 54,722 | 29,113 | 9,025 | 2,038 | 22,126 | 22,126 |
| 2006 | 111,370 | 93,469 | 93,197 | 75,991 | 17,206 | 5,334 | 1,204 | 13,076 | 12,558 |
| 2007 | 123,217 | 99,932 | 103,111 | 81,246 | 21,865 | 6,778 | 1,531 | 16,618 | 15,327 |
| 2008 | 127,530 | 106,843 | 106,720 | 86,864 | 19,855 | 6,155 | 1,390 | 15,090 | 13,367 |
| 2009 | 131,994 | 114,232 | 110,455 | 92,872 | 17,583 | 5,451 | 1,231 | 13,363 | 11,368 |
| 2010 | 136,613 | 118,230 | 114,321 | 96,122 | 18,199 | 5,642 | 1,274 | 13,831 | 11,300 |
| 2011 | 141,395 | 122,368 | 118,322 | 99,486 | 18,836 | 5,839 | 1,318 | 14,315 | 11,232 |
| 2012 | 146,344 | 126,651 | 122,463 | 102,968 | 19,495 | 6,043 | 1,365 | 14,816 | 11,165 |
| 2013 | 151,466 | 131,084 | 126,749 | 106,572 | 20,177 | 6,255 | 1,412 | 15,335 | 11,098 |
| 2014 | 156,767 | 135,672 | 131,186 | 110,302 | 20,883 | 6,474 | 1,462 | 15,871 | 11,031 |
| 2015 | 162,254 | 140,420 | 135,777 | 114,163 | 21,614 | 6,700 | 1,513 | 16,427 | 10,965 |
| 2016 | 167,933 | 145,335 | 140,529 | 118,159 | 22,371 | 6,935 | 1,566 | 17,002 | 10,899 |
| 2017 | 173,810 | 150,422 | 145,448 | 122,294 | 23,154 | 7,178 | 1,621 | 17,597 | 10,834 |
| 2018 | 179,894 | 155,686 | 150,539 | 126,574 | 23,964 | 7,429 | 1,677 | 18,213 | 10,769 |
| 2019 | 186,190 | 161,136 | 155,807 | 131,004 | 24,803 | 7,689 | 1,736 | 18,850 | 10,704 |
| 2020 | 192,707 | 166,775 | 161,261 | 135,590 | 25,671 | 7,958 | 1,797 | 19,510 | 10,640 |
| 2021 | 199,451 | 172,612 | 166,905 | 140,335 | 26,570 | 8,237 | 1,860 | 20,193 | 10,576 |
| 2022 | 206,432 | 178,654 | 172,746 | 145,247 | 27,499 | 8,525 | 1,925 | 20,900 | 10,512 |
| 2023 | 213,657 | 184,907 | 178,793 | 150,331 | 28,462 | 8,823 | 1,992 | 21,631 | 10,449 |
| 2024 | 221,135 | 191,378 | 185,050 | 155,592 | 29,458 | 9,132 | 2,062 | 22,388 | 10,387 |
| 2025 | 228,875 | 198,077 | 191,527 | 161,038 | 30,489 | 9,452 | 2,134 | 23,172 | 10,324 |
| 2026 | 236,886 | 205,009 | 198,231 | 166,674 | 31,556 | 9,782 | 2,209 | 23,983 | 10,262 |
| 2027 | 245,177 | 212,185 | 205,169 | 172,508 | 32,661 | 10,125 | 2,286 | 24,822 | 10,201 |
| 2028 | 253,758 | 219,611 | 212,350 | 178,546 | 33,804 | 10,479 | 2,366 | 25,691 | 10,139 |
| 2029 | 262,639 | 227,298 | 219,782 | 184,795 | 34,987 | 10,846 | 2,449 | 26,590 | 10,079 |
| 2030 | 271,832 | 235,253 | 227,474 | 191,263 | 36,212 | 11,226 | 2,535 | 27,521 | 10,018 |
| 2031 | 281,346 | 243,487 | 235,436 | 197,957 | 37,479 | 11,618 | 2,624 | 28,484 | 9,958 |
| 2032 | 291,193 | 252,009 | 243,676 | 204,885 | 38,791 | 12,025 | 2,715 | 29,481 | 9,898 |
|      |         |         |         |         |        |         |         | Total   | 341,936 |

## QUALIFICATIONS OF THE WITNESS

**NAME:** Dr. Jack P. Suyderhoud

**TITLE:** Professor of Business Economics
College of Business Administration
University of Hawaii at Manoa
2404 Maile Way
Honolulu, Hawaii 96822

**EDUCATION:**
Ph.D., Economics, Purdue University (August 1978)
MS, Economics, Purdue University (December 1972)
B.S. (Cum Laude), Economics and Mathematics, Jamestown College (May 1971)

**EMPLOYMENT HISTORY:**

Professor (August 1978-present), College of Business Administration, University of Hawaii, Honolulu.

Acting Dean (July - December, 1999), Associate Dean (1996-2000), College of Business Administration, University of Hawaii, Honolulu.

Executive Director, Tax Review Commission, State of Hawaii, September 1983-December 1984.

Visiting Associate Professor, San Jose State University, Department of Quantitative Methods, Summer 1987.

Adjunct Instructor, Central Michigan University, Hawaii Center, Honolulu, 1980-1983.

Visiting Assistant Professor, Department of Economics, Purdue University, West Lafayette, Indiana, 1977-1978.

Assistant Professor, Department of Economics, Eastern Michigan University, Ypsilanti, Michigan, 1975-1977.

Research Associate, Advisory Commission on Intergovernmental Relations, Washington, D.C., 1974-1975.

**PROFESSIONAL AFFILIATIONS:**

8

Academy of International Business; American Economic Association; National Tax Association (Past Chairman of Intergovernmental Fiscal Relations Committee); National Association of Forensic Economists; Western Economic Association; Hawaii Economic Association (Past President); Western Tax Association (Past President).

### TEACHING AND SERVICE AWARDS:

Business Administration, *Kaizen Service Award* (1993 and 1995). University of Hawaii, *Presidential Citation for Meritorious Teaching* (1992); First Interstate Bank, *Dennis Ching Award for Excellence in Teaching* (1991); Graduate Business Student Association, *Professor of the Year*, winner (1987) and runner-up (1990); College of Business Administration, *Teaching Award* (1988); Executive MBA Student, *Outstanding Professor Award* (1983); College of

### QUALIFIED AS EXPERT WITNESS ON ECONOMIC MATTERS:

State of Hawaii Circuit Courts on Oahu, Maui, Kauai, and Hawaii.
U.S. District Courts in Hawaii and Orange County, California.
Superior Court, Commonwealth of the Northern Marianas Islands.

### CONSULTING CLIENTS:

Numerous attorneys for whom I provide expert testimony on economic issues. (On going)

State of Hawaii, Department of Business, Economic Development, and Tourism, Strategic Industries Division, Energy Branch: gasoline prices and price cap policies in Hawaii (2004-2005)

AIG Hawaii: assessment of Hawaii insurance tax credit (1997 and 1999)

American Samoa Government: evaluation of minimum wage statutes (1995)

Hawaii State AFL-CIO: evaluation of state unemployment insurance fund balance adequacy (1991)

Amfac Distribution Comp.: forecasting model for sales. (1991)

Government of Guam: evaluation of tax incentives for economic development. (1989-90)

County of Hawaii Planning Department: economic and government revenue forecasting . (1986-1989, and 1999)

National Education Association, Washington, D.C.: state revenue diversification (1988) and state income taxes (1987).

9

Hawaii Natural Energy Institute: economics of hydrogen and methanol production from renewable resources (1985-1988); economic analysis of alternate energy, (1980)

Pacific Basin Development Council: air transportation economics for U.S. flag Pacific islands. (1984)

## PUBLICATIONS:
### Refereed journal articles:

Jack P. Suyderhoud, "Ocean Adventures," Case Research Journal, V. 23, No. 3, Summer 2003, pp. 121-128. Reprinted in *Cases in Entrepreneurship and Small Business Management* (tentative), Kirk Heriot (Editor), January 2005, Prentice-Hall.

Jack P. Suyderhoud and Lisa A. Chun, "Taxes and the Calculation of Future Medical Expenses," Journal of Forensic Economics, V. 9, No. 1, Winter 1996, pp. 23-44.

Jack P. Suyderhoud and Richard L. Pollock, "Policy Issues and Employee Choices Related to State-Local Pension Plans," Western Tax Review, V. 11, No, 1-2, Winter 1995.

Jack P. Suyderhoud, "State-Local Revenue Diversification, Balance, and Fiscal Performance," Public Finance Quarterly, V. 22, No. 2, April 1994, pp. 168-194.

Jack P. Suyderhoud, Thomas A. Loudat, and Richard L. Pollock, "Cumulative Tax Rates on the Working Poor; Evidence of a Continuing Poverty Wall," Journal of Economic Issues, V. 28, No. 1, March 1994, pp. 155-171.

Jack P. Suyderhoud, Richard L. Pollock, and W. Ron Singleton, "Measuring State Income Tax Expenditures; A Pragmatic View of Income Tax Base Erosion," Public Budgeting and Financial Management, V. 5, No. 2, 1993, pp. 417-442.

Jack P. Suyderhoud and K.K. Seo, "Tax Design and the Meddling Factor," Public Budgeting and Finance, V. 12, No. 4, Winter 1992, pp. 35-46.

Richard L. Pollock and Jack P. Suyderhoud, "An Empirical Window on Expectations Formation," The Review of Economics and Statistics, V. 74, No. 2, May 1992, pp. 320-324.

Jack P. Suyderhoud, "International Aspects of Public Finance Education," Western Tax Review, V. 9, No. 1, 1991, pp. 115-132.

Jack P. Suyderhoud and Richard L. Pollock, "Current Versus Ultimate Life Expectancies: Perceptions and Implications," Journal of Forensic Economics, V. 4, No. 1, 1990, pp. 101-115.

Jack P. Suyderhoud, "Effects of TRA86 on Business Incentives Provided By ASEAN Countries," Western Tax Review, V. 8, No. 1 (Winter 1990), pp. 206-226.

Jack P. Suyderhoud, "State-Local Revenue Diversification: An Empirical Tempest in a Teapot," Western Tax Review, V. 7, No. 1 (Winter 1989), pp. 160-181.

Richard L. Pollock and Jack P. Suyderhoud, "The Role of Rainy Day Funds in Achieving Fiscal Stability," National Tax Journal, V. 34, No. 4, (December 1986), pp. 485-497.

Jack P. Suyderhoud, M. Wali Osmanzai, and Wesley H. Hillendahl, "Are Bank Economists Bridging the Gap Between Analysis and Corporate Decision Making." Business Economics, V. 17, No. 4 (September 1982), pp. 5-10.

John M. Strefeler and Jack P. Suyderhoud, "Piggybacking—A Free Ride With No Takers," Journal of the American Taxation Association," (Winter 1980), pp. 42-48.

Jack P. Suyderhoud and Michael A. Veseth, "The Effect of Inflation on the Income Elasticity of Taxes," <u>Public Finance Quarterly</u>, V. 4, No. 3 (July 1976), pp. 323-337.

**Popular press book chapters:**

Jack P. Suyderhoud, "Government Size", in Randall W. Roth (ed.), <u>The Price of Paradise—Lucky You Live Hawaii?</u>, Mutual Publishing, Honolulu, 1992, pp. 53-56; reprinted in Japanese in, Randall Roth and Hiroyuki Hata (eds.), <u>The Price of Paradise</u>, Yushindo Kobunsha Publishing, Tokyo, 1995, pp. 204-208.

Jack P. Suyderhoud, "Taxing Retirement Income", in Randall W. Roth (ed.), <u>The Price of Paradise—Lucky You Live Hawaii?</u>, Mutual Publishing, Honolulu, 1992, pp. 99-103.

Jack P. Suyderhoud, "Business Taxes", in Randall W. Roth (ed.), <u>The Price of Paradise—Lucky You Live Hawaii?</u>, Mutual Publishing, Honolulu, 1992, pp. 129-133.

**Refereed conference proceedings:**

S.H. Browne, P.K. Takahashi, and J.P. Suyderhoud, "Evaluation of Hydrogen Production Processes," <u>International Renewable Energy Conference Proceedings</u>, Honolulu, September 1988.

Richard L. Pollock and Jack P. Suyderhoud, "The Problems and Prospects of Focusing a State Tax Review," <u>Proceedings of the 78th Annual Conference on Taxation, 1985</u>, National Tax Association - Tax Institute of America.

Jack P. Suyderhoud, "The Role of Risk Assessment in the DSS Evaluation Process," <u>Proceedings of the 16th Annual Hawaii International Conference on System Sciences, 1983</u>, pp. 507-511.

Jack P. Suyderhoud, "A Systematic Approach to Risk Assessment for EDP/MIS/DSS Projects," <u>Proceedings of the 14th Annual Meeting of the American Institute of Decision Sciences, 1982</u>, pp. 174-176.

Jack P. Suyderhoud, D. Richard Neill and Patrick Takahashi, "Real World Economics of Wind Energy," <u>Proceedings of the National Conference of the American Wind Energy Association</u>, 1982.

Jack P. Suyderhoud and John M. Strefeler, "Preferential Treatment of Alternate Energy Sources and Energy Conservation," <u>Proceedings of the 72nd Annual Conference on Taxation, 1979</u>, National Tax Association - Tax Institute of America, pp. 275-293.

Non-Refereed Conference Papers:

Jack P. Suyderhoud, "Economic Analysis in Personal Injury," in <u>Proof of Personal Injury Damages in Hawaii</u>, Professional Education Systems, Inc. Eau Claire, Wisconsin, 1990.

Jack P. Suyderhoud, "Hawaii's Energy Economy and Hydrogen Economics," <u>Proceedings of the Third International Symposium on Hydrogen Produced From Renewable Energy</u>, Hawaii Natural Energy Institute, Honolulu, May 1986. (INVITED)

**Jack P. Suyderhoud, Ph.D.**
Economist
7149 Kukii Street
Honolulu, Hawaii 96825
Phone 808-395-8031; Fax 808-395-1876

## RATES FOR ECONOMIC CONSULTATION (effective 1/1/06)

| | |
|---|---|
| Research, Analysis, Communications, Report Preparation: | $275.00 per hour |
| Deposition Testimony: | $300.00 per hour |
| Court Testimony: | $1,500 per 1/2 day |
| Additional expenses (such as travel and travel time): | extra |

## Testimony Provided by Jack Suyderhoud

| Date | Case Name | Retaining Attorney | Pltf/Def | Trial | Depo | Trial Court f=fed; s=state; a=arb | Civil No. |
|---|---|---|---|---|---|---|---|
| 10/20/05 | Barcai v. Betwee | Mike Tateishi | P | X | | S | 92-0874(2) |
| 8/25/05 | Luke v. Matsuo | William Hunt | D | | X | S | 03-1-2007-10 (VSM) |
| 4/5/05 | White v. State Farm | Patricia Wall | D | | | A | 02-1-0367(2) |
| 3/29/05 | Ohashi v. Tomita | Robert Kim | p | | x | s | 02-1-0185K |
| 2/17/05 | Yoshinaga v. Honolulu Advertiser | Gary Okubo | P | | X | S | (03-1-1041-05) |
| 12/22/04 | Bedellion v Straub | Charles Ferrera | P | | X | F | 05-00073 HG BMK |
| 11/24/04 | Kim v. Filleul | Wade Katano | D | | X | S | 02-1-2451-10 (RWP)) |
| 8/25/04 | Yamane (Duong) v Pohlson | Daniel Morris | P | | X | S | 01-1-0940-03 |
| 8/10/04 | Dotson v. Roscoe Moss Hawaii | Michelle Luke | D | X | X | S | 01-1-0628 (3) |
| 8/2/04 | Ibara v. Aloha Tower | D. O'Connor Jr. | D | | X | S | 03-1-000223 (VSM) |
| 7/29/04 | Wendt v. USA | Mike Livingston | P | X | | F | 03-00184 DAE-BMK |
| 6/1/04 | Houser v. Aston Hotels | James Myhre | D | | X | S | 03-00029 SOM LEK |
| 7/9/04 | Nacapuy v. | Ronald Au | P | X | X | S | |
| 4/21/04 | Warhola v. Hartford Underwriters | Wesley Ching | D | X | | A | mediation |
| 4/16/04 | Pulawa v GTE | Ronald Shigekane | D | | X | S | 98-3683-08 DDD |
| 2/18/04 | Kaeo v. Mitsunage | Charles Ferrera | p | | x | | 99-2968-08 |
| 1/14/04 | HonHawaii v. | Howard Glickstein | p | x | x | a | DPR 01-0120-M/A |
| 12/23/03 | Kealoha v. State | Charles Fell | d | | x | | 01-1-0681(3) |
| 10/24/03 | Chan v. Island Movers | Jeffre Juliano | p | | x | s | CV 02-1-1512-06 |
| 10/9/03 | Tahara v Perry | Jay Friedheim | p | x | | s | |
| 9/29/03 | Flowers v Sause Brothers | Preston Easley | p | x | | f | 02-00149 SOM-BMK) |
| 8/28/03 | Chang v. Tam | Craig Kugisaki | P | | X | S | 01-1-3033-10 (VSM) |
| 8/22/03 | Luberts v Moore | Gregg Young | P | | X | s | |
| 6/16/03 | Sim v. Mitsubishi | Kevin Yuen | p | x | | f | 00-00667 LEK |
| 6/2/03 | Weber v. Eco-Adventures | Howard McPherson | p | | x | f | 02-00596 ACK/BMK |
| 5/7/03 | Strausser v. Lowe's | James Krueger | p | | x | f | 01-00726 SOM/KSC |
| 4/22/03 | Burns v. UnumProvident | John O'Neill | p | | x | f | 00-00804 BMK |
| 4/1/03 | Eida v. Meiji Seika | Jim Dandar | p | | x | f | 02-00055 DAE-KSC |
| 3/18/03 | Ochs v. HMSA | Stephen Means | d | | x | s | 01-1-0459(3) |

| Date | Case | Attorney | p/d | | | | Case No. |
|---|---|---|---|---|---|---|---|
| 1/22/03 | Zanakis v. Emmis | Bruce Voss | d | x | | f | 01-00661 DAE/BMK |
| 12/16/02 | Kubeckova | Mark Galagher | p | x | x | s | 00-1-1207-04 (DDD) |
| 12/6/02 | Adams | D. Gierlach | p | | | s | 95-0960 (1) |
| 10/11/02 | Bayne & Kahakai | Bickerton | p | x | | s | |
| 8/9/02 | Maxwell | Preston Easley | p | | x | s | 98-00724 ACK |
| 7/19/02 | Granados | Janice Kim | p | | x | s | 99-0178-01 (RWP) |
| 7/17/02 | Ua | Preston Easley | p | | x | f | 00-00654 SPK-LEK |
| 4/5/02 | Bosque | J. Kim | p | x | | s | 98-0-002624 |
| 2/4/02 | Li (Cai) | C. Bouslog | p | | x | s | 00-1-0152-01(RWP) |
| 1/31/02 | McKenzie | G. Ching | d | | x | s | 00-01-147 |
| 11/28/01 | Darlington | R. Nishida | d | | x | s | 97-0892(2) |
| 11/28/01 | Darlington | R. Nishida | d | | x | s | 97-0892(2) |
| 10/22/01 | Hirata | K. Fukunaga | d | | x | s | 00-1-2099-07 GWBC |
| 10/16/01 | Richter v Richter | Dewa | d | x | | family ct | |
| 10/01/01 | Liwai | L. Phillips | p | | x | s | CV00-00176DAE KSC |
| 09/17/01 | Nada | G. Kidani | p | | x | s | 99-0-001336(vsm) |
| 08/29/01 | Buscher | S. Masui | p | x | x | s | 99-220K |
| 07/25/01 | Ousley | J. Levitt | p | | x | s | |
| 07/24/01 | Klink v State | G. Berticevich | p | x | x | s | |
| 07/17/01 | Bhakta et al. | A. Phillips | p | x | x | s | 99-0074(1) |
| 06/19/01 | Gaylord | Wes Ching | d | | | a | |
| 06/04/01 | Thai | V. Carpenter-Asui | p | | x | a | 99-3246-08 |
| 05/17/01 | Howard v State | M. Green | p | x | x | s | 98-2818-07(GWBC) |
| 05/15/01 | Hoohuli | J. Leavitt | p | x | x | Guam | CV2377-98 |
| 04/26/01 | Evans et al v State | M. Green | p | x | x | s | 97-1908-05 |
| 03/08/01 | Antone v Kaiser | C. Dias | p | | x | s | 99-1772-04 |
| 03/07/01 | Chun | D. Kagawa | p | | x | s | |
| 01/08/01 | Mitobe | Parsons | p | | x | s | |

14