ORIGINAL

Of Counsel:
MATSUI CHUNG
A Law Corporation

RANDALL Y.S. CHUNG     2929-0
WARD F.N. FUJIMOTO     4517-0
Suite 1400 Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813
Telephone No.   (808) 536-3711
Email: info@triallawhawaii.com

Attorneys for Defendants
And Third-Party Plaintiffs
JEFFREY LOWE and LINDA LOWE

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 3 1 2006

at ____o'clock and ____min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LISA ROMERO, | ) CIVIL NO. CV04-00285 DAE BMK |
| | ) |
| Plaintiff, | ) DEFENDANTS JEFFREY LOWE AND |
| vs. | ) LINDA LOWE'S PRETRIAL |
| | ) STATEMENT; CERTIFICATE OF |
| | ) SERVICE |
| JEFFREY LOWE; LINDA LOWE; | ) |
| MATTHEW RAY SEVERSON; BRETT | ) Final Pretrial Conference |
| SCHELAND; BENJAMIN ALLEN WILDER; | ) Date: not yet set |
| MINDY WILDER; GEORGE KLAUS, III; | ) Time: not yet set |
| JOHN DOES 1-10; JANE DOES 1-10; | ) Judge: The Honorable |
| DOE CORPORATION 1-10; DOE | )         David Alan Ezra |
| PARTNERSHIPS 1-10; and DOE | ) |
| GOVERNMENTAL ENTITIES 1-10, | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| JEFFREY LOWE and LINDA LOWE, | ) |
| | ) |
| Third-Party | ) |
| Plaintiffs | ) |
| vs. | ) |
| | ) |
| STEVEN J. KOTT and KOTT, INC. | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |
| | ) |

SUBJECT INDEX

I.     PARTY ................................................... 1

II.    JURISDICTION AND VENUE ................................. 1

III.   SUBSTANCE OF ACTION .................................... 1

IV.    UNDISPUTED FACTS ....................................... 3

V.     DISPUTED FACTUAL ISSUES ................................ 9

VI.    RELIEF PRAYED ......................................... 10

VII.   POINTS OF LAW ......................................... 11

       A.   Essential Elements Of Negligence Claim .............. 11

       B.   Known, Open and Obvious Danger Doctrine ............. 12

       C.   Primary Implied Assumption Of Risk. ................. 14

       D.   The Recreational Use Statute. ....................... 15

       E.   Legal Causation ..................................... 15

       F.   Superseding Causation. .............................. 17

       G.   Contributory Negligence. ............................ 17

       H.   Medical Special Damages ............................. 19

       I.   Lost Earnings Damages ............................... 20

       J.   General Damages ..................................... 20

       K.   Mitigation Of Damages. .............................. 21

       L.   Apportionment Of Damages ............................ 22

       M.   Special Verdict Form ................................ 22

       N.   Offsets For Prior Settlements ....................... 24

VIII.    PREVIOUS MOTIONS ....................................... 24

IX.      WITNESSES TO BE CALLED ................................. 25

X.       EXHIBITS ............................................... 30

XI.      FURTHER DISCOVERY AND/OR MOTIONS ....................... 34

XII.     STIPULATIONS ........................................... 35

XIII.    AMENDMENTS/DISMISSALS .................................. 35

XIV.     SETTLEMENT DISCUSSIONS ................................. 36

XV.      AGREED STATEMENT ....................................... 37

XVI.     BIFURCATION/SEPARATE TRIAL OF ISSUES ................... 37

XVII.    APPOINTMENT AND LIMITATION OF EXPERTS .................. 37

XVIII.   TRIAL .................................................. 37

XIX.     ESTIMATE OF TRIAL TIME ................................. 38

XX.      CLAIMS OF PRIVILEGE OR WORK PRODUCT .................... 38

XXI.     MISCELLANEOUS .......................................... 38

TABLE OF AUTHORITIES

**Cases:**

Akee v. Dow Chemical Co., 293 F. Supp. 2d 1140 (D. Hawai`i 2002) ................................................. 17

Atahan v. Muramoto, 91 Hawai`i 345, 984 P.2d 104 (Ct. App. 1999) ................................................. 15

Bachran v. Morishige, 52 Hawai`i 61 469 P.2d 808, 813 (1970) ................................................. 20

Bidar v. Amfac, Inc., 66 Hawai`i 547, 669 P.2d 154 (1983) ................................................. 11

Condron v. Harl, 46 Hawai`i 66, 374 P.2d 613 (1962) ........... 20

Corbett v. Association of Apartment Owners of Wailua Bay View Apartments, 70 Hawai`i 415, 772 P.2d 693 (1989) ................................................. 12

Craft v. Peebles, 78 Hawai`i 287, 893 P.2d 138 (1995) ......... 16

Domingo v. T.K., 289 F.3d 600 (9th Cir. 2002) ................ 16

Dunn v. Gourmet of Macon, Inc., 207 Ga. App. 826, 429 S.E.2d 282 (1993) ................................................. 16

Exxon Co. v. Sofec, Inc., 54 F.3d 570 574 (9th Cir. 1995), aff'd, 517 U.S. 830 (1996) .......................... 17

Foronda v. Hawaii International Boxing Club, 96 Hawai`i 51, 25 P.3d 826 (Ct. App. 2001) .................... 14

Franco v. Fujimoto, 47 Hawai`i 408, 390 P.2d 740 (1964)) ................................................. 20, 21

Friedrich v. Department of Transportation, 60 Hawai`i 32, 586 P.2d 1037 (1978) ............................... 13, 14

Gump v. Wal-Mart Stores, Inc., 93 Hawai`i 417, 5 P.3d 407 (2000) ................................................. 23, 24

Harris v. State of Hawaii, 1 Hawai`i App. 544, 623 P.2d 446 (1981) .................................. 11, 12, 13

Ho v. Leftwich, 88 Hawai`i 251, 965 P.2d 793 (1998) . . . . . . . . . . . 19

Howard v. United States, 181 F.3d 1064 (9th Cir. 1999) . . . . . . . . 15

Hulsman v. Hemmeter Development Corp., 65 Hawai`i 58,
    647 P.2d 713 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Izumi v. Park, 44 Hawai`i 123, 351 P.2d 1083 (1960) . . . . . . . . . . . 21

Joel Properties, Inc. v. Reed, 416 S.E.2d 570 (Ga. Ct.
    App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Josue v. Isuzu Motors America, Inc., 87 Hawai`i 413,
    958 P.2d 535 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kahan v. United States, 73 F.Supp.2d 1172 (D. Hawai`i
    1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Kaiu v. Raymark Industries, Inc., 960 F.2d 806 (9th
    Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Luckette v. Orkin Exterminating Co., 534 So.2d 517
    (La. Ct. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Malani v. Clapp, 56 Hawai`i 507, 517, 542 P.2d 1265
    (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Marco Kona Warehouse v. Sharmilo, Inc., 7 Hawai`i App.
    383, 768 P.2d 247 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Marrs v. Keelan, 254 Neb. 723, 578 N.W.2d 442 (1998) . . . . . . . . . . 15

Mitchell v. Branch, 45 Hawai`i 128, 363 P.2d 969
    (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Miyamoto v. Lum, 104 Hawai`i 1, 84 P.3d 509 (2004) . . . . . . . . . . . 15

Montalvo v. Lapez, 77 Hawai`i 282, 884 P.2d 345
    (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22, 23

Moore v. St. Bernard Parish, 619 So.2d 719 (La. Ct.
    App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ozaki v. Association of Apartment Owners Of Discovery
    Bay, 87 Hawai`i 265, 954 P.2d 644 (1998) . . . . . . . . . . . . . . . . . . . . 19

Rapoza v. Parnell, 83 Hawai'i 78, 924 P.2d 572 (Ct.
    App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Richardson v. Sport Shinko (Waikiki Corporation), 76
  Hawai`i 494, 880 P.2d 169 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Seiger v. Yeager, 44 Ohio Misc. 2d 40, 542 N.E.2d 1119
  (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sones v. Real Estate Development Group, Inc., 606
  S.E.2d 687 (Ga. Ct. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tabieros v. Clark Equipment Co., 85 Hawai`i 336, 944
  P.2d 127 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Tanuvasa v. City and County of Honolulu, 2 Hawai`i
  App. 102, 115, 626 P.2d 1175 (1981) . . . . . . . . . . . . . . . . . . . . . . 20

Wagatsuma v. Patch, 10 Hawai`i App. 547, 879 P.2d 572
  (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

West v. Tan, 208 F. Supp. 708 (D. Hawai`i 1962),
  aff'd, 322 F.2d 924 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . 13, 14

Wheelock v. Sport Kites, Inc., 839 F. Supp. 730 (D.
  Hawai`i 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Young v. Price, 47 Hawai`i 309, 388 P.2d 203 (1963) . . . . . . . . . . 18

**Statutes**

HRS § 520-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

HRS § 663-31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Miscellaneous**

15 Am. Jur., Damages, § 37, p. 436 . . . . . . . . . . . . . . . . . . . . . . . . . 21

2 Harper and James, Torts, § 27.13 (1956) . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Torts, § 430 (1979) . . . . . . . . . . . . . . . . . 16

Restatement (Second) of Torts, § 440 (1965) . . . . . . . . . . . . . . . . . 17

<u>DEFENDANTS JEFFREY LOWE AND LINDA LOWE'S PRETRIAL STATEMENT</u>

Come now Defendants and Third-Party Plaintiffs JEFFREY LOWE and LINDA LOWE (hereinafter "LOWE Defendants"), by and through their attorneys, MATSUI CHUNG, and, hereby respectfully submit their Pretrial Statement pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.6 of the Local Rules of Practice for the United States District Court for the District of Hawai`i and the current Rule 16 Scheduling Order in this case.

I.    <u>PARTY</u>:

This Pretrial Statement is respectfully submitted on behalf of Defendants and Third-Party Plaintiffs JEFFREY LOWE and LINDA LOWE (hereinafter "LOWE Defendants").

II.    <u>JURISDICTION AND VENUE</u>:

LOWE Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441, and federal jurisdiction exists on the basis of diversity of citizenship under 28 U.S.C. § 1332 and venue is proper under 28 U.S.C. § 1391.  No party has disputed jurisdiction and no party has disputed that proper venue lies in this District.

III.    <u>SUBSTANCE OF ACTION</u>:

This action arises out of a dispute over liability, causation and damages in connection with Plaintiff LISA ROMERO's fall on New Years Eve, December 31, 2002/January 1, 2003,

through an open fireman's pole/hole (hereinafter "Subject

Accident") in Defendant MATTHEW RAY SEVERSON's bedroom, on the

second story of a residence on premises (hereinafter "Subject

Property") located at 111 Hauoli Street, Kailua, Hawaii, owned

by LOWE Defendants and leased to Defendants MATTHEW RAY

SEVERSON, BRETT SCHELAND and GEORGE KLAUS III, BENJAMIN ALLEN

WILDER, and former Defendants BENJAMIN ALLEN WILDER and MINDY

WILDER HEBERT.  Despite strict instructions given by the LOWE

Defendants to the tenants to refrain from removing or altering

an iron safety railing surrounding the firepole/hole, Defendant

SEVERSON removed the railing prior to the Subject Accident and

Defendant KLAUS has admitted to his insurance company that he

was aware of the removal of the railing prior to the Subject

Accident.   Likewise, Plaintiff has admitted (at least to her

UC-Berkeley Professor and mentor, Meredith Minkler, Ph.D.) that

she was aware of the removal of the railing and, in fact,

chastised Defendant SEVERSON for removing the railing, before

the Subject Accident.

        As a result of the Court's November 3, 2005 Order (1)

Granting Third-Party Defendants Steven J. Kott And Kott Inc.'s

Motion For Summary Judgment Filed 3/31/05; (2) Granting In Part

And Denying In Part Defendant Matthew Ray Severson's Motion For

Summary Judgment Filed 3/23/05; (3) Granting In Part And Denying

In Part In Part And Denying In Part Defendants Jeffrey Lowe And

2

Linda Lowe's Motion For Summary Judgment Filed 3/7/05; and (4) Granting In Part And Denying In Part Defendants George Klaus III And Brett Scheland's Motion For Summary Judgment Filed 5/11/05 (hereinafter "Summary Judgment Order"), and prior settlements between Plaintiff and Defendants MATTHEW RAY SEVERSON, GEORGE KLAUS III, BRETT SCHELAND the only remaining claim in this case is a claim for negligence by Plaintiff against the LOWE Defendants.

As more fully set forth below, Plaintiff cannot meet her burden of proving one or more essential elements of this claim as against LOWE Defendants and, in any event, cannot establish that substantial damages are recoverable against LOWE Defendants in this case. In addition, LOWE Defendants intend to rely upon all defenses available them based on the evidence in this case, including, but not limited to, lack of notice and control, the known, open and obvious danger defense, the recreational use defense, the assumption of risk defense, the recreational use defense, Plaintiff's contributory and/or comparative negligence, superseding causation, apportionment of damages, and Plaintiff's failure to mitigate damages.

IV.    UNDISPUTED FACTS:

LOWE Defendants respectfully submit that the following material facts are not reasonably disputable:

3

1.    Prior to the Subject Accident, Plaintiff had been
to the Subject Premises at least five times as the girlfriend of
Defendant MATTHEW RAY SEVERSON.  Plaintiff's stays would
sometimes last for weeks but neither Plaintiff, nor Mr. SEVERSON
ever paid rent for Plaintiff's stays or otherwise asked for
permission that Plaintiff be allowed to stay on the Subject
Premises.

2.    Plaintiff became aware of the firepole/hole at
the time of her first visit in December 2001.

3.    From that time through November 2002, the
firepole/hole was surrounded by an iron metal safety railing
which was bolted down to the floor of the second story of the
Subject Premises.

4.    During one of Plaintiff's prior stays, Plaintiff
observed that several of the tenants and their friends actually
opened a gate on the safety railing and used the pole to get
from the second floor to the first floor of the premises in
Plaintiff's presence.

5.    During Plaintiff's December 2001 visit, and at
Plaintiff's request, Defendant MATTHEW RAY SEVERSON plugged the
firepole/hole with a loose foam sponge like material to block
sound and light from coming through the hole from the first
floor of the Subject Premises.

6.    In November 2002, and unbeknownst to the LOWE
Defendants, Defendant MATTHEW RAY SEVERSON removed the safety
railing in order to make room for a new desk on the second floor
of the premises.

4

7.    During this time frame and even though they had a "long-distance" relationship due to her doctoral studies at the University of California at Berkeley, Plaintiff and Defendant MATTHEW RAY SEVERSON would converse via telephone about their lives on a daily basis.

8.    During one of these telephone conversations, Defendant MATTHEW RAY SEVERSON informed Plaintiff that he had removed the safety railing in order to make room for his new desk and Plaintiff objected to danger created by the removal of the railing, warning Defendant MATTHEW RAY SEVERSON that someone might get hurt.

9.    Plaintiff has admitted that, had the safety railing not been removed, Plaintiff would not have fallen through the hole.

10.    On December 31, 2002, Plaintiff arrived at the Honolulu International Airport in the mid-afternoon for what was contemplated to be a three-week recreational vacation/stay with Defendant MATTHEW RAY SEVERSON.

11.    The latter picked Plaintiff up at the airport and the two stopped at the Kaneohe Marine Base Commissary and Kaneohe Marine Base Package Store to purchase food and beverages on the way to the Subject Premises.

12.    The purchase included a 12-pack of Coors Light beer, a bottle of Mandarin Absolut Vodka and, in Plaintiff's words, "three bottles of a very good red wine."

13.    The two arrived at the Subject Premises no later than 5:00 p.m. and immediately went upstairs to Defendant

5

MATTHEW RAY SEVERSON's bedroom, which was still illuminated by ambient daylight, to engage in sexual relations.  That encounter lasted about one hour and the two dozed off before going downstairs to prepare dinner.

14.  On her flight to Honolulu, Plaintiff had at least one tropical cocktail.  On the evening of December 31, 2002, Plaintiff drank at least two beers with dinner and two Mandarin Absolut vodka tonics, each with a shot of vodka, while watching a Dave Matthews Band concert on DVD.

15.  Plaintiff wanted to have sexual relations again at midnight "to bring in the new year."

16.  Shortly before midnight, Plaintiff turned on the light in the bathroom adjacent to the firepole/hole in order to brush her teeth and remove her contact lenses before the midnight sexual encounter.

17.  Plaintiff has poor vision and a very bad stigmatism without her contact lenses and needs her contact lenses to read or do anything else.

18.  As Plaintiff was brushing her teeth in the bathroom, she noticed Defendant MATTHEW RAY SEVERSON's new desk next to the bathroom.

19.  Although Plaintiff normally slept on the right side of the bed, their sexual relations that night caused the right side of the bed to become damp from bodily fluids and Plaintiff slept on the left side of the bed.

20.  Approximately one hour after their sexual relations, in the early morning hours of January 1, 2003,

Plaintiff woke up to use the restroom, became disoriented in the dark, walked the wrong way, and fell through the firepole/hole.

    21.  Plaintiff cannot recall the specific mechanics of her fall other than the fact that she walked the wrong way.

    22.  Plaintiff apparently fell on her right foot first, sustaining a sprain to her right ankle, but most of the impact was absorbed by her lumbar spine, resulting in a compression/burst fracture at L1.

    23.  Plaintiff did not lose consciousness and Plaintiff called out to Defendant MATTHEW RAY SEVERSON, who found her on the first floor at the base of the firepole.

    24.  Defendant MATTHEW RAY SEVERSON was able to move Plaintiff to a first floor bedroom utilized by Defendant GEORGE KLAUS III and they accessed information regarding Plaintiff's health coverage via Mr. KLAUS's personal computer and also contacted Plaintiff's friend and Mr. KLAUS's fiancée, Sybil Russell, M.D., to request medical advice.

    25.  Plaintiff did not request any immediate medical attention other than the advice from Dr. Russell, did not request any immobilization precautions, and did not request that Defendant MATTHEW RAY SEVERSON call an ambulance.

    26.  At about 8:00 a.m. on the morning of January 1, 2003, at the urging of Mr. KLAUS, Mr. SEVERSON decided to drive Plaintiff to seek emergency room treatment at Castle Memorial Medical Center.

    27.  Plaintiff was eventually transported via ambulance to Straub Clinic & Hospital where she underwent a

laminectomy and pedicle screw fusion to repair her fractured vertabrae, which was performed by Todd Thompson, M.D.   By all accounts, the surgery went very well.

28.   During the surgery, it was discovered that Plaintiff also had a preexisting meningioma, which was also removed as a therapeutic benefit to Plaintiff.

29.   Following the Subject Accident, Mr. SEVERSON took immediate steps to board up the firepole/hole.  Neither Mr. SEVERSON nor Plaintiff Romero made any immediate report of the fall to the LOWE Defendants.  According to Mr. SEVERSON, he did not want to get the Lowe Defendants involved.

30.   On or about January 10, 2003, Mr. LOWE visited the premises and was greeted with Happy New Year wishes by Plaintiff, who apparently was in good spirits and walking about the apartment without assistance and without any visible pain. Mr. LOWE did notice, however, that Plaintiff was wearing a metal appendage on her back and inquired as to what it was for.   It was only at that point that Plaintiff informed Mr. LOWE that she had fallen through the firepole/hole and broken her back.

31.   By all accounts from Plaintiff's neurosurgeons, Plaintiff's surgery went extremely well and Plaintiff was able to make a recovery from the surgery within months, and there is no objective evidence of significant residual problems from the surgery.

32.   Plaintiff has not needed to visit any neurosurgeon, since the August 10, 2004.

33. Although Plaintiff has since treated with Kulveen Sachdeva, M.D., a non-surgical neurologist referred to Plaintiff by her attorneys, Plaintiff's 2005 visits to Dr. Sachdeva essentially indicated that Plaintiff was able to manage any pain through a Lidoderm patch and Pilates exercises.

34. Since September 2005, Plaintiff has been able to work in a full-time job as a Health Scientist with the federal Center For Disease Control in Atlanta Georgia.

35. Plaintiff is currently treating with Patricia Baumann, M.D. an anesthesiologist with Emory Healthcare in Atlanta, Georgia for thoracic spondylosis, which is a degenerative condition that cannot be causally linked with Plaintiff's fall.

V.    DISPUTED FACTUAL ISSUES:

LOWE Defendants dispute all of Plaintiff's allegations except as expressly set forth herein and specifically dispute factual issues relating to liability, causation and damages. Subject to LOWE Defendants' defenses, the primary factual disputes may include the following:

A.    Whether and to what extent Plaintiff can meet her burden of establishing negligence on the part of the LOWE Defendants where she was aware of the open and obvious firepole/hole feature before her fall, she had assumed the risk of falling through the hole, she was on the premises for a recreational purpose, was intoxicated, and walked in the dark,

Plaintiff has admitted that she would not have fallen had the safety railing not been removed, and the Lowe Defendants were not aware of the removal of the safety railing.

      B.   Whether or not Plaintiff assumed the risk of falling through the firepole/hole by walking in the dark without her glasses.

      C.   Whether and to what extent Plaintiff can establish that her damages were legally caused by negligence on the part of the LOWE Defendants.

      D.   Whether Plaintiff's negligence was extraordinary and a superseding cause of her damages.

      E.   Whether and to what extent Plaintiff's claims are barred by her own contributory and/or comparative negligence.

      F.   Whether and to what extent Plaintiff can establish the extent of her damages with reasonable certainty in the absence of a clinical diagnosis of impairment or disability.

      G.   Whether Plaintiff exercised reasonable care to mitigate her damages under the circumstances of this case.

VI.  <u>RELIEF PRAYED</u>:

      LOWE Defendants pray for a judgment that the Plaintiff's Complaint against them be dismissed and that they be awarded its costs, reasonable attorneys' fees or commission and such other further relief as this Court deems just and proper in the premises.

VII. <u>POINTS OF LAW</u>:

LOWE Defendants intend to rely upon all points of law available to them under the Court's Summary Judgment Order. Subject to further briefing, LOWE Defendants also intend to rely upon additional points of law including, but not limited to, the following:

A.    <u>Essential Elements Of Negligence Claim</u>.

In order to prevail on her negligence claim against the LOWE Defendants, Plaintiff bears the burden of proving the existence of each and every one of the following essential elements:

(1) LOWE Defendants owed a duty to Plaintiff to warn or protect her against a known unreasonable risk of harm;

(2) LOWE Defendants breached that duty;

(3) LOWE Defendants' breach of duty legally caused Plaintiff's damages; and

(4) The nature and extent of Plaintiff's damages.

Under Hawai`i law, a premises owner is not the insurer of its premises; a premises owner's duty is to use reasonable care to make the premises reasonably safe for persons reasonably anticipated to be on the premises. See <u>Bidar v. Amfac, Inc.</u>, 66 Hawai`i 547, 669 P.2d 154 (1983); <u>Harris v. State of Hawaii</u>, 1 Hawai`i App. 544, 623 P.2d 446 (1981). Where a condition exists upon the premises which poses an unreasonable risk of harm to

persons using the premises, then the possessor of the premises,
if it knew or should have known of the unreasonable risk, owes a
duty to the persons using the premises to take reasonable steps
to eliminate the unreasonable risk or adequately to warn users
against it.  Corbett v. Association of Apartment Owners of
Wailua Bay View Apartments, 70 Hawai`i 415, 417, 772 P.2d 693,
695 (1989).  See also Richardson v. Sport Shinko (Waikiki
Corporation), 76 Hawai`i 494, 880 P.2d 169 (1994).

        Assuming the existence of an "unreasonable risk of
harm," Plaintiff bears the burden of establishing reasonable
notice on the part of a defendant.  A premises owner is not
subject to liability if, having exercised reasonable care, he
discovers the condition or risk before the time of the accident,
but not long enough before to provide him the time reasonably
necessary to remedy the condition or to give reasonable warning
or to provide reasonable protection.  See Harris v. State of
Hawaii, 1 Hawai`i App. 544, 623 P.2d 446 (1981).

        B.   Known, Open and Obvious Danger Doctrine.  Under
Hawai`i law, LOWE Defendants owed no duty with respect to any
danger that was known to Plaintiff prior to her fall or that was
open or obvious which a reasonable person exercising ordinary
attention, perception and intelligence can be expected to avoid,
absent circumstances which excuse oversight of the danger or
prevent its avoidance because any such danger was not an

                              12

unreasonable risk of harm.  See Friedrich v. Department of
Transportation, 60 Hawai`i 32, 37-38, 586 P.2d 1037, 1040-41
(1978); Harris v. State of Hawaii, 1 Hawai`i App. 554, 557, 623
P.2d 446, 448 (1981); Kahan v. United States, 73 F.Supp.2d 1172,
1178 (D. Hawai`i 1999); West v. Tan, 208 F. Supp. 708, 709-10
(D. Hawai`i 1962), aff'd, 322 F.2d 924 (9th Cir. 1963).  See
also Josue v. Isuzu Motors America, Inc., 87 Hawai`i 413, 958
P.2d 535 (1998).  As stated by the Hawai`i Supreme Court in
Friedrich:.

>           People can hurt themselves on almost any
>           condition of the premises.  That is
>           certainly true of an ordinary flight of
>           stairs.  But it takes more than this to make
>           a condition unreasonably dangerous.  If
>           people who are likely to encounter a
>           condition may be expected to take perfectly
>           good care of themselves without further
>           precautions, then the condition is not
>           unreasonably dangerous because the
>           likelihood of harm is slight.  This is true
>           of the flight of ordinary stairs in a usual
>           place in the daylight.  It is also true of
>           ordinary curbing along a sidewalk, doors or
>           windows in a house, counters in a store,
>           stones and slopes in a New England field,
>           and countless other things which are common
>           in our every day experience.  It may also be
>           true of less common and obvious conditions
>           which lurk in a place where visitors would
>           expect to find such dangers.  The ordinary
>           person can use or encounter all of these
>           things safely if he is fully aware of their
>           presence at the time.  And if they have no
>           unusual features and are in a place where he
>           would naturally look for them, he may be
>           expected to take care of himself if they are
>           plainly visible.  In such cases it is enough
>           if the condition is obvious, or is made

> obvious (e.g. by illumination).  The
> knowledge of the condition removes the sting
> of unreasonableness from any danger that
> lies in it, and obviousness may be relied on
> to supply knowledge.  Hence the obvious
> character of the condition is incompatible
> with negligence in maintaining it.  If
> plaintiff happens to be hurt by the
> condition, he is barred from recovery by
> lack of defendant's negligence towards
> [her], no matter how careful plaintiff
> [herself] may have been.  If an invitee has
> a cramp at the head of a flight of stairs
> and falls down it, his own freedom from
> fault will not help him to recovery.  2
> Harper and James, Torts, § 27.13 (1956).

Friedrich, 60 Hawai`i at 36 n.1, 586 P.2d at 1040 n.1 (emphasis

added).

    C.   Primary Implied Assumption Of Risk.

    Under Hawai`i law, the doctrine of primary implied

assumption risk survived the adoption of comparative fault

principles and applies to bar negligence claims where the

plaintiff voluntarily undertakes a known risk of harm.  See

Foronda v. Hawaii International Boxing Club, 96 Hawai`i 51, 25

P.3d 826 (Ct. App. 2001) (amateur boxing); West v. Tan, 208 F.

Supp. 708, 709-10 (D. Hawai`i 1962), aff'd, 322 F.2d 924 (9th

Cir. 1963) (stepping up on a stage in a nightclub).

    One who knowingly walks where holes are located

assumes the risk of falling into such holes.  See Dunn v.

Gourmet of Macon, Inc., 207 Ga. App. 826, 429 S.E.2d 282 (1993);

Luckette v. Orkin Exterminating Co., 534 So.2d 517 (La. Ct.

App. 1988); <u>Marrs v. Keelan</u>, 254 Neb. 723, 578 N.W.2d 442
(1998).

Likewise, one who steps in the dark assumes any risk
of a fall because of such darkness. <u>Seiger v. Yeager</u>, 44 Ohio
Misc. 2d 40, 42, 542 N.E.2d 1119, 1121 (1988); <u>Joel Properties,
Inc. v. Reed</u>, 416 S.E.2d 570 (Ga. Ct. App. 1992); <u>Sones v. Real
Estate Development Group, Inc.</u>, 606 S.E.2d 687 (Ga. Ct. App.
2004). In particular, one who steps in the dark assumes the
risk of falling into a hole because of such darkness. <u>Moore v.
St. Bernard Parish</u>, 619 So.2d 719 (La. Ct. App. 1993).

D.    <u>The Recreational Use Statute</u>.

Hawaii's Recreational Use Statute ("HRUS"), codified
in Chapter 520 of the Hawaii Revised Statutes ("HRS"), provides
that a landowner does not owe any duty to one who is permitted
to be on the landowner's premises for purely recreational
purposes. <u>See</u> HRS § 520-3; <u>Atahan v. Muramoto</u>, 91 Hawai`i 345,
984 P.2d 104 (Ct. App. 1999) (applying statute to affirm summary
judgment in favor of defendants); <u>Howard v. United States</u>, 181
F.3d 1064 (9th Cir. 1999).

E.    <u>Legal Causation</u>.

Under Hawai`i law, an essential and central element of
Plaintiff's negligence claim, upon which Plaintiff bears the
burden of proof, is legal causation. <u>See</u> <u>Miyamoto v. Lum</u>, 104
Hawai`i 1, 15, 84 P.3d 509, 523 (2004); <u>Wagatsuma v. Patch</u>, 10

Hawai`i App. 547, 566, 879 P.2d 572, 583-84 (1994).  It is a
fundamental tenet of tort law that no Defendant should be liable
for any Plaintiff's damages that are not legally caused by that
Defendant's negligence, as opposed to other accidents or causes.
See Craft v. Peebles, 78 Hawai`i 287, 893 P.2d 138, 148 (1995)
Montalvo v. Lapez, 77 Hawai`i 282, 289, 884 P.2d 345, 352
(1994).

A plaintiff is not entitled to recover damages for an
injury that is solely caused by her own negligence.  Kahan v.
United States, 73 F.Supp.2d 1172, 1178 (D. Hawai`i 1999).

Legal causation is never presumed, and the mere
happening of an accident is insufficient to establish causation
by a particular Defendant.  Even if one assumes, arguendo, that
there has been a negligent breach of a duty owed by a Defendant
to the Plaintiff, if such breach of duty is not the legal cause
of Plaintiff's alleged damages, there can be no liability on the
part of that Defendant for such damages.  See generally Mitchell
v. Branch, 45 Hawai`i 128, 131, 363 P.2d 969, 973 (1961);
Restatement (Second) of Torts, § 430 (1979).  An act or omission
is a legal cause of an injury or damage only if it was a
substantial factor in bringing about the injury or damage.  Id.;
Domingo v. T.K., 289 F.3d 600 (9th Cir. 2002) (applying Hawai`i
law).

In other words, Plaintiff bears the burden of proving that her alleged damages flowed directly from Defendants' negligence, and not any other cause. See <u>Akee v. Dow Chemical Co.</u>, 293 F. Supp. 2d 1140, 1144 (D. Hawai`i 2002) (applying Hawai`i law).

Conclusory expert opinions, vague theories, speculation and/or conjecture are insufficient to meet Plaintiff's burden of establishing legal causation. <u>Id</u>.

F.    Superseding Causation.

Under Hawai`i law, extraordinary negligence on the part of Plaintiff or other parties can be a superseding cause, relieving LOWE Defendants from liability. See <u>Hulsman v. Hemmeter Development Corp.</u>, 65 Hawai`i 58, 68-70, 647 P.2d 713, 720-21 (1982); <u>Exxon Co. v. Sofec, Inc.</u>, 54 F.3d 570 574 (9th Cir. 1995), <u>aff'd</u>, 517 U.S. 830 (1996) (applying <u>Restatement (Second) of Torts</u> §§ 440-42 (1965)).  Where an intervening force is a substantial factor causing Plaintiff's damages, and operates independently of any situation created by LOWE Defendants, or is not a normal result of such a situation, that intervening force is a superseding cause and is the sole legal cause of Plaintiffs' damages.  <u>Id</u>.

G.    Contributory Negligence.

A plaintiff cannot abandon all caution for her own safety, but is required to exercise reasonable care for his or

her own safety and a failure to so is contributory negligence.

See  Richardson v. Sport Shinko (Waikiki Corporation), 76

Hawai`i 494, 880 P.2d 169 (1994).  Young v. Price, 47 Hawai`i

309, 316, 388 P.2d 203, 208 (1963).   Walking while intoxicated

is contributory negligence.  See Rapoza v. Parnell, 83 Hawai'i

78, 924 P.2d 572 (Ct. App. 1996).

HRS § 663-31 provides as follows:

> **Contributory negligence no bar; comparative
> negligence; findings of fact and special
> verdicts.** (a) Contributory negligence shall
> not bar recovery in any action by any person
> or the person's legal representative to
> recover damages for negligence resulting in
> death or in injury to person or property, if
> such negligence was not greater than the
> negligence of the person or in the case of
> more than one person, the aggregate
> negligence of such persons against whom
> recovery is sought, but any damages allowed
> shall be diminished in proportion to the
> amount of negligence attributable to the
> person for whose injury, damage or death
> recovery is made.
>
> (b) In any action to which subsection (a) of
> this section applies, the court, in a
> nonjury trial, shall make findings of fact
> or, in a jury trial, the jury shall return a
> special verdict which shall state:
>
> (1) The amount of the damages which would
> have been recoverable if there had been no
> contributory negligence; and
>
> (2) The degree of negligence of each party,
> expressed as a percentage.
>
> (c) Upon the making of the findings of fact
> or the return of a special verdict, as is
> contemplated by subsection (b) above, the

court shall reduce the amount of the award
in proportion to the amount of negligence
attributable to the person for whose injury,
damage or death recovery is made; provided
that if the said proportion is greater than
the negligence of the person or in the case
of more than one person, the aggregate
negligence of such persons <u>against whom</u>
<u>recovery is sought</u>, the court will enter a
judgment for the defendant.

(d) The court shall instruct the jury
regarding the law of comparative negligence
where appropriate.

(Emphasis added).

Where Plaintiff's negligence is greater than any
negligence on the part of the only defendants participating in a
trial, HRS § 663-31 bars any recovery against those defendants.
See <u>Ozaki v. Association of Apartment Owners Of Discovery Bay</u>,
87 Hawai`i 265, 954 P.2d 644 (1998).

> H.    <u>Medical Special Damages</u>.

In order to recover special damages for medical
expenses, Plaintiff bears the burden of establishing, via
medical expert testimony within a reasonable degree of medical
probability, the reasonableness and necessity of treatments and
that they are attributable to the underlying tort.  <u>Ho v.</u>
<u>Leftwich</u>, 88 Hawai`i 251, 256, 965 P.2d 793, 798 (1998).

A plaintiff cannot recover damages for future medical
expenses unless plaintiff proves by competent expert testimony,
within a reasonable degree of medical probability, that such

expenses will be medically necessary. See Bachran v. Morishige,
52 Hawai`i 61, 68-69, 469 P.2d 808, 813 (1970) (citing Franco v.
Fujimoto, 47 Hawai`i 408, 390 P.2d 740 (1964)).

      I.   Lost Earnings Damages.

      Plaintiff bears the burden of establishing lost
earnings with reasonable certainty and an award for lost
earnings cannot be based upon mere speculation, conjecture, or
guesswork.  Tanuvasa v. City and County of Honolulu, 2 Hawai`i
App. 102, 115-17, 626 P.2d 1175, 1184-85 (1981).  In Condron v.
Harl, 46 Hawai`i 66, 374 P.2d 613 (1962), the leading case on
lost earnings, the Hawai`i Supreme Court held that lost earnings
are not legally awardable as a result of an accident where they
are inconsistent with a plaintiff's prior performance and work
status at the time of the accident and did not result from any
disability caused by the defendant.

      J.   General Damages.

      In the event that the Plaintiff claims recovery of
damages for pain and suffering, such damages are not to be
determined by guesswork or speculation.  Where the issue as to
pain or suffering is subjective in nature, Plaintiff bears the
burden of proffering competent expert opinion (to a reasonable
degree of medical probability) and testimony as to the objective
cause of such pain and suffering before a trier of fact may be
permitted to consider such damages.  See Bachran v. Morishige,

52 Hawai`i 61, 68-69, 469 P.2d 808, 813 (1970) (citing <u>Franco v.</u>

<u>Fujimoto</u>, 47 Hawai`i 408, 390 P.2d 740 (1964)).

     K.   <u>Mitigation Of Damages</u>.  In contract or in tort,

the plaintiff has a duty to make every reasonable effort to

mitigate damages.  <u>Malani v. Clapp</u>, 56 Hawai`i 507, 517, 542

P.2d 1265, 1271 (1975); <u>see also</u> <u>Marco Kona Warehouse v.</u>

<u>Sharmilo, Inc.</u>, 7 Hawai`i App. 383, 388, 768 P.2d 247, 251

(1989); <u>Izumi v. Park</u>, 44 Hawai`i 123, 351 P.2d 1083 (1960) (the

plaintiff's duty to mitigate damages is elementary).  As stated

in <u>Franco v. Fujimoto</u>, 47 Hawai`i 408, 427, 390 P.2d 740, 751

(1964):

> The general rule applicable is stated in 15
> Am. Jur., Damages, § 37, p. 436, as follows:
>
>     "It is also incumbent upon the
> injured person to submit to reasonable
> treatment and to follow the advice of a
> competent physician.  No damages will be
> allowed which might have been prevented by
> submitting to treatment to which a
> reasonably prudent man would have submitted
> to improve his condition.  As a rule, if the
> injury is aggravated by the plaintiff's
> neglect to follow the directions of his
> physician, he is to that extent debarred
> from recovering."

<u>See</u> <u>also</u> <u>Tabieros v. Clark Equipment Co.</u>, 85 Hawai`i 336, 372-

73, 944 P.2d 1279, 1315-16 (1997).  The duty to mitigate damages

also includes a duty to seek and maintain suitable alternative

employment.  <u>Id</u>.

L.    Apportionment Of Damages.

Under Hawai`i law, damages should be apportioned for
any preexisting injury that was not legally caused by the LOWE
Defendants.  In Montalvo v. Lapez, 77 Hawai`i 282, 884 P.2d 345
(1994), the Hawai`i Supreme Court held that it was unfair to
hold a defendant responsible for a certain portion of the total
damages suffered by a plaintiff which were not attributable to
the defendant's negligence, the Court held that where a pre-
existing injury or condition exists, and it is not fully
resolved or is not dormant or latent at the time of the accident
from which the present action arises, then the trier of fact
must apportion between the various causes of the condition or
injury.  If the trier of fact is unable to arrive at an
apportionment, even a rough apportionment, then it must divide
the damages equally among the various causes.  Id. at 299-300,
884 P.2d at 362-63.  The Court further held that a defendant
cannot be held liable for damages caused by subsequent accidents
or incidents unless the accident at issue was the legal cause of
the subsequent incidents.  Where the trier of fact determines
that subsequent incidents and resulting injuries were not caused
by the accident at issue, then it must apportion damages to such
subsequent injuries or conditions.  Id. at 300, 884 P.2d at 362.

M.    Special Verdict Form.

22

It is fundamental under Hawaii law that no defendant should be held liable for damages that he/she did not cause. See Montalvo v. Lapez, 77 Hawai`i 282, 884 P.2d 345 (1994); Mitchell v. Branch, 45 Hawai`i 128, 131, 363 P.2d 969, 973 (1961). Toward that end, this Court possesses the discretion to include even non-parties on a special verdict form so that a proper apportionment of liability can be made.  See Gump v. Wal-Mart Stores, Inc., 93 Hawai`i 417, 422, 5 P.3d 407, 412 (2000); Kaiu v. Raymark Industries, Inc., 960 F.2d 806 (9th Cir. 1992) (applying Hawai`i law); Wheelock v. Sport Kites, Inc., 839 F. Supp. 730, 734 (D. Hawai`i 1993) (applying Hawai`i law). Therefore, Defendants SEVERSON, KLAUS and SCHELAND should remain on the special verdict form so that a proper allocation of liability can be made.

In addition to the foregoing, the statutory abolition of joint and several liability (at least for non-economic damages) requires that Defendants SEVERSON, KLAUS and SCHELAND be on the special verdict form for purposes of determining statutory limitations on any joint and several liability.  HRS § 663-10.9(3) provides that a tortfeasor whose percentage of causative negligence is less than twenty-five percent (25%) shall only be liable for non-economic damages in direct proportion to the percentage assigned.  In order to fairly determine the percentage that should be assigned to the LOWE

23

Defendants based on any causative negligence, and whether LOWE
Defendants are subject to joint and several liability for non-
economic damages, HRS § 663-10.9 mandates that Defendants
SEVERSON, KLAUS and SCHELAND should remain on the special
verdict form.

> N.    Offsets For Prior Settlements.

HRS § 663-15.5(a)(3) requires that any claim against a
non-settling tortfeasor be reduced by the amounts stipulated in
the release, or the amount of consideration paid for it,
whichever is greater.  See also Gump v. Wal-Mart Stores, Inc.,
93 Hawai`i 417, 5 P.3d 407 (2000) (holding that non-settling
defendant is entitled to an offset for prior settlement proceeds
realized by the Plaintiff).  LOWE Defendants are entitled to an
offset for all prior settlement proceeds realized by Plaintiff,
in an amount not less than $232,500.

LOWE Defendants respectfully reserve the right to
amend and/or supplement the foregoing and/or submit a trial
brief, trial memoranda, and/or motions for judgment as a matter
of law as to any of the foregoing and/or to raise such
additional points of law as may become appropriate during
further proceedings in this case.

> VIII.  PREVIOUS MOTIONS:

On November 3, 2005, the Court entered an Order (1)
Granting Third-Party Defendants Steven J. Kott And Kott Inc.'s

Motion For Summary Judgment Filed 3/31/05; (2) Granting In Part And Denying In Part Defendant Matthew Ray Severson's Motion For Summary Judgment Filed 3/23/05; (3) Granting In Part And Denying In Part In Part And Denying In Part Defendants Jeffrey Lowe And Linda Lowe's Motion For Summary Judgment Filed 3/7/05; and (4) Granting In Part And Denying In Part Defendants George Klaus III And Brett Scheland's Motion For Summary Judgment Filed 5/11/05 (hereinafter "Summary Judgment Order"). The Summary Judgment Order dismissed Plaintiff's claims for punitive damages and, as a result of the Summary Judgment Order, and prior settlements between Plaintiff and Defendants MATTHEW RAY SEVERSON, GEORGE KLAUS III, BRETT SCHELAND the only remaining claim in this case is a claim for negligence by Plaintiff against the LOWE Defendants.

In addition, the Summary Judgment Order provided that any issues relating to the height of the iron safety railing surrounding the firepole/hole were irrelevant to the Plaintiff's remaining claims in this case. See FRCP Rule 56(d).

IX.    WITNESSES TO BE CALLED:

LOWE Defendants respectfully reserve the right to call witnesses including, but not limited to, the following, by live testimony, telephonic testimony, video-conferenced testimony, deposition testimony, declaration, affidavit and/or by report:

1.    Plaintiff LISA ROMERO.  Expected to testify as to
facts and circumstances surrounding Plaintiff's January 1, 2003
fall, liability issues, causation issues, damages issues,
apportionment issues, authentication of documents, and/or other
relevant matters.

2.    Defendant MATTHEW RAY SEVERSON.  Expected to
testify as to facts and circumstances surrounding Plaintiff's
January 1, 2003 fall, liability issues, causation issues,
damages issues, apportionment issues, authentication of
documents, and/or other relevant matters.

3.    Defendant GEORGE KLAUS III.  Expected to testify
as to facts and circumstances surrounding Plaintiff's January 1,
2003 fall, liability issues, causation issues, damages issues,
apportionment issues, authentication of documents, and/or other
relevant matters.

4.    Defendant BRETT SCHELAND.  Expected to testify as
to facts and circumstances surrounding Plaintiff's January 1,
2003 fall, liability issues, causation issues, damages issues,
apportionment issues, authentication of documents, and/or other
relevant matters.

5.    Defendant BENJAMIN WILDER.  Expected to testify
as to facts and circumstances surrounding Plaintiff's January 1,
2003 fall, liability issues, causation issues, damages issues,

apportionment issues, authentication of documents, and/or other relevant matters.

6.    Defendant MINDY WILDER HEBERT.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

7.    Defendant JEFFREY LOWE.  Expected to testify as to facts and circumstances surrounding liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

8.    Defendant LINDA LOWE.  Expected to testify as to facts and circumstances surrounding liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

9.    Third-Party Defendant STEVEN J. KOTT.  Expected to testify as to facts and circumstances liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

10.    Sybil Russell Klaus, M.D.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

11.  <u>Meredith Minkler, Ph.D</u>.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

12.  <u>Gilbert Romero</u>.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

13.  <u>Alice Romero</u>.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

14.  <u>Sharie Sierra</u>.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

15.  <u>Angela Costanzo</u>.  Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues,

apportionment issues, authentication of documents, and/or other relevant matters.

16. Victoria Vasquez, Ph.D. Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

17. Ilene Dillon, M.S. Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

18. Wayne M. Slagle, P.E. Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

19. Jack Suyderhoud, Ph.D. Expected to testify as to facts and circumstances surrounding Plaintiff's January 1, 2003 fall, liability issues, causation issues, damages issues, apportionment issues, authentication of documents, and/or other relevant matters.

LOWE Defendants respectfully reserve the right to call and/or cross-examine any and all lay and expert witnesses listed

by any other party in their disclosures, discovery responses, pretrial statements and/or impeachment witnesses, rebuttal witnesses and/or witnesses learned of in continuing discovery. LOWE Defendants  further reserve the right to withdraw one or more of the foregoing witnesses and/or object to any witness listed by any party and reserves the right to name any and all alternate, substitute, impeachment and/or rebuttal lay and/or expert witnesses.

    X.    <u>EXHIBITS</u>:

        LOWE Defendants respectfully reserve the right to utilize exhibits from sources including, but not limited to, the following for purposes of supporting its defenses as to liability, causation, damages, and other relevant matters, to add or withdraw exhibits as appropriate, to add exhibits for purposes of impeachment and/or rebuttal, and to amend or supplement this exhibit list as may be appropriate and to utilize exhibits introduced by any other party.   These exhibits are listed here for disclosure purposes and are subject to the preparation of trial exhibit lists.

        1.    Plaintiff's Complaint

        2.    Plaintiff's Initial Disclosures.

        3.    Plaintiff's Response To Defendant MATTHEW RAY SEVERSON's First Request For Answers To Interrogatories.

        4.    Documents produced by Plaintiff Lisa Romero.

5.    Documents produced by Defendants Jeffrey Lowe and Linda Lowe.

6.    Documents produced by Defendant Matthew Ray Severson.

7.    Documents produced by Defendant Brett Scheland.

8.    Documents produced by Defendant Benjamin Allen Wilder.

9.    Documents produced by Mindy Wilder.

10.    Documents produced by Defendant George Klaus, III.

11.    Documents produced by Third-Party Defendant Steven J. Kott.

12.    Documents produced by Third-Party Defendant Kott, Inc.

13.    Deposition of Mindy (Wilder) Hebert (Vols. 1 and 2).

14.    Deposition of George Klaus.

15.    Deposition of Sybil Ann Klaus.

16.    Deposition of Jeffrey Lowe.

17.    Deposition of Linda Lowe.

18.    Deposition of Stephanie L. O'Malley.

19.    Deposition of Lisa Romero (Vols. 1 and 2).

20.    Deposition of Brett Scheland.

21.    Deposition of Matthew Severson.

22.   Deposition of Benjamin Wilder (Vols. 1 and 2).

23.   Deposition of Robert Fink, M.D.

24.   Deposition of Joanna Moss, M.D.

25.   Deposition of Victoria Vasquez, M.D.

26.   Preservation Deposition of Victoria Vasquez, M.D.

27.   Deposition of Meredith Minkler, M.D.

28.   Deposition of Kulveen Sachdeva, M.D.

29.   Deposition of Glenda Evans-Shaw.

30.   Deposition of Thomas Yankowski.

31.   Deposition of Ilene Dillon, MSW.

32.   Deposition of Jeffrey Randall, M.D.

33.   Deposition of Angela Costanzo.

34.   Deposition of Sharie Sierra.

35.   Deposition of Alice Romero.

36.   Deposition of Gilbert Romero.

37.   Deposition of Richard Gill.

38.   Deposition of Robert Griswold.

39.   Deposition Upon Written Questions of Castle
Medical Center and attachments.

40.   Deposition Upon Written Questions of HEPA and
attachments.

41.   Deposition Upon Written Questions of Straub
Clinic and Hospital and attachments.

42.   Deposition Upon Written Questions of East Bay Neurosurgical Group and attachments.

43.   Deposition Upon Written Questions of Ilene Dillon, MSW and attachments.

44.   Deposition Upon Written Questions of University Health Services and attachments.

45.   Deposition Upon Written Questions of University of California, Berkley and attachments.

46.   Deposition Upon Written Questions of Pacific Brain & Spine and attachments.

47.   Deposition Upon Written Questions of Marianne Hafer, L.Ac. and attachments.

48.   Deposition Upon Written Questions of Acupuncture & Herbal Medicine and attachments.

49.   Deposition Upon Written Questions of Grand Lake Health Center and attachments.

50.   Deposition Upon Written Questions of Robert Fink, M.D. and attachments.

51.   Deposition Upon Written Questions of Kulveen Sachdeva, M.D. and attachments.

52.   Deposition Upon Written Questions of Old Republic Title & Escrow and attachments.

53.   Deposition Upon Written Questions of University Health Services and attachments.

54. Records produced by Pacific Brain & Spine.

55.  Any and all deposition exhibits to depositions taken in this case.

56. Transcript Of Full Power Living Radio Show.

57. Report of Wayne M. Slagle, P.E. and any supplements to the same

58. Report of Jack Suyderhoud, Ph.D. and any supplements to the same.

59. Letter dated January 19, 2006 from Patricia Baumann, M.D.

60.  Any and all photographs produced and/or obtained during discovery.

61.  Any and all memoranda and/or declarations, affidavits, and exhibits to any and all motions, memoranda and/or other submissions filed in connection with this case.

LOWE Defendants reserve the right to withdraw any exhibit and the right to utilize any and all documents produced by Plaintiff in this case and/or deposition exhibits to any deposition in this case, and to add exhibits, for purposes of impeachment and/or rebuttal and/or exhibits gathered in the course of continuing discovery.

XI.  FURTHER DISCOVERY AND/OR MOTIONS:

The parties have agreed to an extended discovery deadline of February 3, 2006.  The parties are currently

34

awaiting the Court's ruling (after in camera review) on LOWE

Defendants Local Rule 37.1 request for an order compelling

production of unredacted pages of Plaintiff's personal journal

LOWE Defendants respectfully reserve the right to seek

additional discovery during further proceedings in this case.

LOWE Defendants respectfully reserve the right to file

motions in limine, motions for judgment as a matter of law,

post-trial motions and/or other motions as may be appropriate

given prior proceedings and/or as may be appropriate during

further proceedings in this action.

XII. STIPULATIONS:

LOWE Defendants reserve the right to propose a

Stipulation based on Plaintiff's Response to Defendant MATTHEW

RAY SEVERSON's First Request For Answers To Interrogatories and

Plaintiff's other admissions in this case.

At the current time, LOWE Defendants are not aware of

any other stipulations that have been requested or proposed for

trial and/or pretrial purposes.  LOWE Defendants respectfully

reserve the right to request or propose any stipulations as may

be appropriate during further proceedings in this action.

XIII. AMENDMENTS/DISMISSALS:

LOWE Defendants would object to any amendment of

Plaintiff's Complaint at this time and, pursuant to Rule 15 of

the Federal Rules of Civil Procedure, expressly disclaim any express or implied consent to trial of unpled issues or claims.

LOWE Defendants would be open to discussion toward a dismissal of Plaintiff's claims against them, on such terms as are just.

XIV.  SETTLEMENT DISCUSSIONS:

LOWE Defendants have extensively participated in a prior court-ordered mediation and settlement conferences which have not been successful.

By virtue of prior settlements, Plaintiff has already realized a total recovery of **$232,500**, calculated as follows, in settlement proceeds despite her prior knowledge and substantial contributory negligence in this case:

| | |
|---|---|
| BENJAMIN ALLEN WILDER/MINDY WILDER | $  7,500 |
| BRETT SCHELAND/GEORGE KLAUS III | $125,000 |
| MATTHEW RAY SEVERSON | $100,000 |
| **TOTAL SETTLEMENT PROCEEDS:** | **$232,500**. |

Based on the principle that a plaintiff is entitled to only one satisfaction of judgment and is not entitled to duplicative recovery, and the merits, applicable law, facts and evidence in this case, LOWE Defendants respectfully submit that Plaintiff should be content with the foregoing and should dismiss any and all remaining claims against LOWE Defendants in this case.

Subject to the foregoing, LOWE Defendants remain open to a reasonable settlement discussions, taking into account, the merits, evidence and facts of this case and will be prepared to discuss reasonable settlement possibilities at any upcoming mediation and/or settlement conferences in this case.

XV.  AGREED STATEMENT:

It does not appear that an agreed statement of facts is feasible or desirable in this case.

XVI. BIFURCATION/SEPARATE TRIAL OF ISSUES:

LOWE Defendants respectfully reserve the right to seek separate trials and/or bifurcation to the extent appropriate during further proceedings in this action in order to further convenience, expedition or economy, avoid prejudice, and/or prevent embarrassment, delay or expense.

XVII.  APPOINTMENT AND LIMITATION OF EXPERTS:

A.  LOWE Defendants are not aware of any need for an appointment of a court-appointed expert witness at this time.

B.  LOWE Defendants respectfully reserve the right to file one or more motions in limine with regard to limitations on expert testimony in this case.

XVII.  TRIAL:

Jury trial has been timely demanded and trial is presently scheduled to commence on February 28, 2006.

XXI. ESTIMATE OF TRIAL TIME:

At this time, trial is expected to last 5-10 court days.  The time of presentation of LOWE Defendants's case will depend on what matters are allowed or admitted as part of Plaintiff's case.

XX.  CLAIMS OF PRIVILEGE OR WORK PRODUCT:

A.   LOWE Defendants reserve the right to claim the attorney-client and work product privileges with regard to a confidential statement given by Defendant JEFFREY LOWE to his insurance company in March 2003, on the basis that the statement was given in anticipation of litigation and to facilitate the rendition of professional legal services by defense counsel hired by his insurance company.

B.   LOWE Defendants respectfully reserve the right to assert claims of privilege or work product as the need arises and to the extent appropriate during further proceedings.

XXI.   MISCELLANEOUS:

LOWE Defendants respectfully note that the outcome of pretrial motions may have a material effect on the issues presented at trial.   LOWE Defendants respectfully reserve the

right to amend or supplement this pretrial statement to the

extent appropriate during further proceedings in this action.

      DATED: HONOLULU, HAWAII,   January 31, 2006

                                    RANDALL Y.S. CHUNG
                                    WARD F.N. FUJIMOTO
                                    Attorneys for Defendants
                                    and Third-Party Plaintiffs
                                    JEFFREY LOWE and LINDA LOWE