COPY

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3

 4   LISA ROMERO                    ) CIVIL NO. CV04-00285 DAE KSC
                                    )
 5           Plaintiff,             )
                                    )
 6      vs.                         )
                                    )
 7   JEFFREY LOWE, LINDA LOWE,      )
     MATTHEW RAY SEVERSON, BRETT    )
 8   SCHELAND; BENJAMIN ALLEN       )
     WILDER, MINDY WILDER, GEORGE   )
 9   KLAUS, III, et al.,            )
                                    )
10           Defendants.            )
                                    )
11                                  )
     JEFFREY LOWE and LINDA LOWE,   ) VOLUME I
12                                  ) PAGES 1 THROUGH 190
             Third-Party            )
13           Plaintiffs,            )
                                    )
14      vs.                         )
                                    )
15   STEVEN J. KOTT and KOTT, INC., )
                                    )
16           Third-Party            )
             Defendants.            )
17  _____)

18

19            DEPOSITION OF LISA ROMERO

20   Taken on behalf of Defendants and Third-Party Plaintiffs
     Jeffrey Lowe and Linda Lowe, at the law offices of Davis
21   Levin Livingston Grande, 400 Davis Levin Livingston Grande
     Place, 851 Fort Street, Honolulu, Hawaii 96813, commencing
22   at 10:10 a.m., on Monday, January 10, 2005, pursuant to
     Notice.
23

24   BEFORE:

25       Donna Kohls, CSR 146
         Notary Public, State of Hawaii
```

CARNAZZO COURT-REPORTING CO., LTD.
532-0222

EXHIBIT A

1  A    I think it's obvious that this is something
2  significant, so I noted that.  I think it's significant to
3  me.
4  Q    In other words, it's significant to you whether or
5  not the gate was there as opposed to the gate wasn't
6  there?
7  A    No, that is not what I'm saying.  This is
8  significant-- you are talking about what I have in
9  parenthesis?
10 Q    Yes.
11 A    This is significant-- obviously I wrote this after
12 the injury.  This is significant to me because it was at
13 this trip that Matt Severson bought the desk that later
14 was the cause of him to remove the safety rail, and that
15 is significant to me.
16 Q    Why is it significant to you?
17 A    It's significant to me because had he not removed
18 that safety rail, I feel we wouldn't be here today.
19 Q    In other words, you would not have fallen through the
20 hole?
21 A    Yes.
22 Q    Any other reason?
23 A    No.
24 Q    To your knowledge, were the Lowes aware that you
25 would be on the property during this trip?

1  Q    (By Mr. Fujimoto)  To the best of your recollection,
2  what time did you go to sleep that night?
3  A    To the best of my recollection, it was after 1:00
4  a.m.
5  Q    So you had sexual relations for approximately an
6  hour?
7  A    Yes.
8  Q    What happened next?
9  A    Rephrase that question.  I don't know exactly what
10 you are asking.
11 Q    Did you go to sleep at about 1:00 o'clock in the
12 morning?
13 A    Yes.
14 Q    Did you wake up at any time after going to sleep at
15 about 1:00 o'clock?
16 A    I woke up to go to the restroom, yes.
17 Q    What time was that, to the best of your estimation?
18 A    Again, this is an approximate and this is a guess,
19 but it is an estimate.  I'm assuming it was around 3:00
20 a.m.
21 Q    Why did you wake up at about 3:00 o'clock a.m.?
22 A    To go to the restroom.
23 Q    Did you at any time use the restroom after you had
24 sexual relations but before falling asleep at about 1:00
25 o'clock?

Case 1:04-cv-00285-DAE-BMK    Document 188-4    Filed 02/13/2006    Page 4 of 5

81

```
 1   disoriented when you woke up because you were on the
 2   opposite side of the bed than you normally sleep on?
 3   A    What do you mean by disoriented?
 4   Q    Do you feel that you were disoriented because you
 5   were on a different side of the bed than you normally
 6   sleep on when going to the restroom?
 7            MR. LIVINGSTON:  Calling for speculation
 8            THE WITNESS:  No, I didn't feel disoriented.  I
 9   don't recall what I felt when I woke up in the middle of
10   the night to go to the restroom.  I don't recall thinking
11   I'm disoriented or anything like that.
12   Q    (By Mr. Fujimoto)  Do you have any explanation as to
13   why you fell in the hole as opposed to going to the
14   restroom?
15   A    Ask that again.
16   Q    Do you have any explanation in your mind as to why
17   you fell in the hole as opposed to going to the restroom,
18   because you had planned to go to the restroom?
19   A    Obviously I walked in a different direction than the
20   restroom.  I didn't make it to the restroom.  I fell
21   through the hole.
22   Q    And your testimony is that you walked in a different
23   direction than it would have taken you to get to the
24   restroom, correct?
25   A    From the left side of the bed, yes.
```

1   I, LISA ROMERO, do hereby certify that I have read
2   the foregoing typewritten pages 1 through 188, inclusive,
3   and corrections, if any, were noted by me; and that same
4   is now a true and correct transcript of my testimony.

6   Dated  Jan. 31, 2005

13  Signed before me this 31
14  day of Jan., 2005

    [signature: Lisa Romero]