IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI`I

| | |
|---|---|
| **LISA ROMERO,** | **CV04-00285 DAE-BMK** |
| Plaintiffs, | (Other Non-Vehicle Tort) |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION** |
| **JEFFREY LOWE; LINDA LOWE; MATTHEW RAY SEVERSON; BRETT SCHELAND; BENJAMIN ALLEN WILDER; MINDY WILDER; GEORGE KLAUS, III; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10;** | |
| Defendants. | |
| **JEFFREY LOWE AND LINDA LOWE,** | |
| Third-Party Plaintiffs, | |
| vs. | |
| **STEVEN J. KOTT AND KOTT, INC.** | |
| Third-Party Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiff LISA ROMERO, by and through her attorneys, moves in limine for an order permitting the introduction of evidence to show that the Lowe Defendants breached their duty to protect against the known risk that someone would be killed or seriously injured by falling through the fire pole hole. Plaintiff contends that a reasonable person in the position of Defendants JEFFREY and LINDA LOWE ("the Lowe Defendants") would have eliminated that unreasonable risk of harm prior to renting the premises, and that the Lowe Defendants failure to do so constitutes actionable negligence.

The Lowe Defendants were experienced professionals engaged in the management of residential rental properties. They knew that the fireman's pole was "not permitted," and that it constituted a possible hazard even with the railing in place. They knew the danger associated with the fireman's pole was the risk that someone would be killed or seriously injured by falling through the fire pole hole. They knew or should have known that there were any number of ways (or "manners of occurrence") in which a person might fall through the fire pole hole. For example, they knew or should have known that the protective railing might be removed, or that the gate in the railing might be left open, or that children would open the gate or climb over the railing, or that someone would accidentally fall

over the railing and through the hole, or that someone would be injured while playing on the fireman's pole. And, if the Lowes had performed a reasonable inspection of the property prior to renting it, they would have determined that the guard rail was too low to comply with the safety height requirement of the Honolulu Building Code and that the property could not lawfully be rented in that condition.

In Hawai`i "what is reasonable and prudent in the particular circumstances is marked out by the foreseeable range of danger." Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987). There is near "universal agreement" among jurisdictions, including Hawai`i, that "what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all manner of occurrence." W.P. Keeton, Prosser and Keeton on the Law of Torts (5th Ed., 1984). W.P. Keeton, § 43, at 299; Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 387-388, 742 P.2d 377, 384-385; Tancredi v. Dive Makai Charters, 823 F.Supp. 778, 786 (D.C.Haw. 1993) ("It is not necessary that the exact manner of the accident or injury be foreseeable," citing Okada v. State, 1 Haw. App. 101, 614 P.2d 407 (1980)).

Plaintiff files this motion to address a statement in this Court's *Order (1) Granting Third Party Defendants Steven J. Kott and Kott Inc.'s Motion for Summary judgment filed 3/31/05; Order (2) Granting in Part and Denying in Part*

*Defendant Matthew Ray Severson's Motion for Summary Judgment filed 3/23/05; Order (3) Granting in Part and Denying in Part Defendants Jeffrey Lowe and Linda Lowe's Motion for Summary Judgment filed 3/7/05; and Order (4) Granting in Part and Denying in Part Defendant George Klaus, III, and Brett Scheland's Motion for Summary Judgment filed 5/11/05* filed on November 3, 2005 (hereafter "November 3, 2005 Order"): "[T]he court finds that the height of the railing that once surrounded the fireman's pole to be irrelevant to Plaintiff's negligence claims." November 3, 2005 Order at 11.    The Court did not make clear that its ruling was a definitive ruling on evidence.    In any event, it is reasonable and appropriate under the circumstances to raise by way of a motion in limine the issue of whether Plaintiff will be permitted to offer at trial all competent evidence relevant to the issue of whether the Lowe Defendants breached their duty to protect against the known risk that someone would be killed or seriously injured by falling through the fire pole hole.[1]    After all, the Court's ruling on this matter will have a profound impact on the scope of evidence that will be permitted at trial.    And because this issue cuts to the very heart of Plaintiff's case against the Lowe Defendants, it is necessary that the issue be appropriately framed and presented to the Court, thoroughly briefed by the parties, and clearly preserved for possible appeal.

---

[1] See Section IV of this Memorandum, captioned "It is Proper for The Court to Adjudicate These Evidentiary Issues by Way of a Motion in Limine"

## II.   SUMMARY OF RELEVANT FACTS

Since 1982, the Lowe Defendants have acted as landlords and property managers for a number of residential rental properties they have owned in California and Hawai`i.  They both were licensed real estate brokers in California, and Linda Lowe is an attorney

The Lowes purchased a residential property located at 111 Hauoli Street in Kailua in March of 2001.  The main house on the property had a three-to four- foot open hole in the floor of the second story master bedroom.  The hole allowed light and sound to travel between the bedroom and the living room below.  The hole was equipped with a fire pole, which allowed persons in the bedroom to slide down ten to twelve feet to the living room.  Approximately one month after purchasing the property, on April 8, 2001, the Lowe Defendants rented the main house on the property to a group of young Naval Officers.

When the Lowe Defendants purchased the Hauoli Street home in early 2001, they were informed by the prior owner that the fire pole was "not permitted." They did not determine why the fire pole was "not permitted" prior to offering the house for rent to the Tenant Defendants.

It is undisputed that the Lowe Defendants knew that the hole and fire pole constituted a "possibly hazardous architectural feature," even with the railing in place, at the time they offered the house for rent. Indeed, they included in the Residential Lease Agreement a provision specifically warning that the fireman's

4

pole was "a unique and possibly hazardous architectural feature of the property," to be used by the tenants only at their own risk.  Both Mr. and Mrs. Lowe confirmed that the danger associated with the fire pole was that someone would be seriously injured or killed by falling through the hole, and that the clause in the Lease Agreement warning of this "possibly hazardous architectural feature of the property" was intended to protect them against liability.

Mrs. Lowe did not feel the hole and pole were appropriate to the interior design of the house and wanted them removed. She also had concerns about the fireman's pole and associated hole as a possible hazard that she and her husband knew was "unpermitted."  She therefore investigated the option of removing the fire pole and sealing off the hole, and was informed that it would be "pretty easy" to take it out. According to Mrs. Lowe, she asked Matt Severson and the Wilders whether they wanted to keep the fireman's pole or whether they wanted it removed, and Mr. Severson responded that he wanted to keep it because "he thought it was cool or something to that effect."  Neither Matt Severson nor the Wilders recall any offer by the Lowe Defendants to have the fireman's pole removed.  When asked whether, in her judgment, there was any utility to the fireman's pole other than as a recreational device, Ms. Lowe responded, "I don't know." When Ms. Lowe was asked whether, in retrospect, she believed it had been imprudent to lease the premises without closing off the fire pole hole, she responded, "I don't know."

The Lowes knew or should have known at the time they rented the premises that there was a risk that the tenants might remove the railing that surrounded the hole and pole.  Indeed, the Lowe Defendants admit that they gave the Tenant Defendants "strict instructions . . . to refrain from removing or altering an iron safety railing surrounding the firepole/hole . . .."[2] Lowe Pretrial Statement, p. 2. Defendant Mindy Heber (fka Wilder) confirmed this in her deposition, where she testified that the Lowe Defendants specifically told her at the time that she signed the lease not to remove the guardrail from around the fire pole.

It is hardly surprising that the Lowe Defendants foresaw the possibility that the tenants would remove the railing. They knew or should have known that the tenant of the upstairs bedroom might desire to cover the hole, since the three- to four- foot opening in the floor substantially invaded his privacy. They knew or should have known that the railing intruded into the bedroom space in a way that a tenant might find objectionable, especially since Mrs. Lowe did not like the pole for "aesthetic reasons."  They knew or should have known that the railing substantially limited the wall space available in the room to place a desk or dresser.

---

[2] Based on this admission by the Lowe Defendants in their Pretrial Statement, Plaintiff has brought a Motion in Limine # 3 to Preclude the Lowe Defendants from Offering Evidence or Argument at Trial To Show That It Was Not Foreseeable That A Tenant Would Remove the Railing.  Yet even if the Court denies Plaintiff's Motion in Limine #3, the Court already has determined, in adjudicating the Lowe Defendants' Motion for Summary Judgment, that the issue of whether it was foreseeable that the tenants would remove the railing is a jury question.

Indeed, the dresser that was placed on the wall next to the railing at the time they purchased the house substantially overlapped the doorway to the bathroom. And they knew or should have known how easy it would be to remove the railing. Defendant Severson testified that the railing was supported only by four stanchions, each of which was attached to the floor, through the carpet, by four 2 1/2 inch screws which he easily removed with a socket wrench. The railing was not attached to the walls. One of the few non-party witnesses who slept in Mr. Severson's bedroom and thus has personal knowledge about the railing, described it as "very flimsy" and "very short." Tenant Defendant Mindy Hebert (fka Wilder) testified that the spring on the gate would only close the gate halfway. Mr. Lowe never even opened the gate.

There is substantial testimony that the railing was too short to prevent a person from falling over the railing and through the fire pole hole. Tenant Defendant Scheland testified that, in his opinion, Ms. Romero "could have easily tripped over that railing and fallen down." Plaintiff's human factors and accident reconstruction expert, Dr. Richard Gill, specifically identified as one of the risks associated with the railing was "the danger that someone might fall over the top of the railing (i.e., 33.5 inches is below the center of mass of most adults and thus if they were to accidentally walk into such a low railing, they could easily flip over the top; hence the requirement for higher railing heights)."

Hawai`i's Residential Landlord-Tenant Code includes a statute requiring that the landlord ensure that the rental premises are in compliance with all building codes related to safety throughout the tenancy. H.R.S. § 521-42 includes the following provision:

> "(a) The landlord shall at all times during the tenancy:
>     (1) Comply with all applicable building and housing laws materially affecting health and safety; . . ."

The landlord's obligations under H.R.S. § 521-42(a)(1) are non-delegable under subparagraph (b)(2). A landlord may not lawfully rent a residential property that is not in compliance with building codes affecting safety, even with full disclosure and a purported assumption of risk by the tenants. It is apparent that the Lowe Defendants knew or should have known of this statutory provision, for they cite to Chapter 521 in numerous places in the Residential Lease Agreement.

Plaintiff plans to offer testimony (including expert opinions) and argument to support a finding that the fireman's pole and hole, even with the railing in place, posed an unreasonably dangerous condition at the time the Lowe Defendants offered the premises for rent. The evidence will show that a reasonable landlord with the knowledge and information available to the Lowe Defendants would have permanently covered the hole in the master bedroom and removed the fire pole prior to leasing the house. This negligent failure of the Lowe Defendants to seal the hole in the master bedroom floor prior to making the property available for rental was a substantial factor in causing Plaintiff's injuries.

## III. PLAINTIFF SHOULD BE PERMITTED TO OFFER ALL EVIDENCE TENDING TO SHOW THAT THE LOWE DEFENDANTS BREACHED THEIR DUTY TO PROTECT AGAINST THE KNOWN DANGER THAT SOMEONE WOULD FALL THROUGH THE FIRE POLE HOLE

Under Rule 401 of the Federal Rules of Evidence, evidence is deemed relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." "Rule 401 does not raise a high standard." Hurley v. Atlantic City Police Dept., 174 F.3d 95, 109-10 (3rd Cir. 1990). "Because [Rule 401] makes evidence relevant 'if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.'" Blancha v. Raymark Indus., 972 F.2d 507, 514 (3d Cir.1992) (quoting 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 5166, at 74 n. 47 (1978)). See also Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005) (trial court in Hawai`i abused its discretion when it denied admission of evidence on relevancy grounds).

The Lowe Defendants concede in their Pretrial Statement that "a premises owner's duty is to use reasonable care to make the premises safe for persons reasonably anticipated to be on the premises." Lowe Defendants Pretrial Statement, p. 11. Indeed, this is well-settled Hawai`i law. Corbett v. Association of Apartment Owners of Wailua Bayview Apartments, 70 Haw. 415, 772 P.2d 693 (1989) ("A possessor of land, who knows or should have known of an

unreasonable risk of harm posed to persons using the land, by a condition on the land, owes a duty to persons using the land to take reasonable steps to eliminate the unreasonable risk, or warn the users against it."); Kaczmarczyk v. City and County of Honolulu, 65 Haw. 612, 656 P.2d 89, 91-92 (1982); Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384 (1987); Littleton v. State, 66 Haw. 55, 69, 656 P.2d 1336, 1345; Andrade v. Oahu Railway & Land Co., 27 Haw. 381, 391-392 (1923); Pickard v. City & County of Honolulu, 51 Haw. 134, 135, 452 P.2d 445, 446 (1969) ("an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual."); Richardson v. Sport Shinko (Waikiki Corp.), 76 Haw. 494, 503, 880 P.2d 169, 178; Armstrong v. Cione, 6 Haw. App. 652, 660, 736 P.2d 440, 446 (1987), affirmed on other grounds, 69 Haw. 176, 738 P.2d 79 (1987) ("whenever a landlord and tenant relationship exists, the landlord has a duty to maintain the premises in a reasonably safe condition for the tenant."). See, also, Becker v. IRM Corp., 698 P.2d 116, 125 (Cal.S.Ct. 1985) ("A person contemplating purchase of rental property, in the exercise of due care, will examine its condition. Maintenance of rental property in a safe and habitable condition is the primary responsibility of the landlord.").

The First Claim for Relief asserted in Plaintiff's Complaint is a general negligence claim based on this body of settled Hawai`i law:

> The Defendants owed a duty to exercise reasonable care to eliminate and/or protect against hazards to guests in the 111 Hauoli Street premises, including Plaintiff Romero. Defendants breached their duty, as aforesaid, by failing to eliminate and/or protect against the hazard associated with the open fire pole hole in the floor of the second story of the 111 Hauoli Street premises, and are therefore liable to Plaintiff Romero for negligence and gross negligence.

Complaint, paragraph 20. *Plaintiff's Complaint does not even mention the removal of the railing from around the fire pole hole.* The Complaint describes the hazard that posed an unreasonable risk of harm as "[t]he hole in floor of the second story bedroom":

> The bedroom occupied by Defendant Severson at the 111 Hauoli Street location was on the second floor. This room had a pole of the type seen in fire stations running from the second story ceiling through a hole cut in the floor of the second story down to the floor of the first story living room. The hole in floor of the second story bedroom constituted an extreme hazard to visitors to the premises.

Id., paragraph 12. Plaintiff has taken the position throughout this litigation that the primary negligence of the Lowe Defendants was their failure to take reasonable steps to eliminate that unreasonable risk of harm – i.e., the known risk that a houseguest would be seriously injured or killed by falling through the fire pole hole -- prior to offering the house for rent.

The case law in Hawai`i and in the overwhelming majority of jurisdictions requires that Plaintiff be allowed to offer at trial all evidence relevant to her claim that the Lowe Defendants failed to take reasonable steps to eliminate the known risk that a houseguest would be seriously injured or killed by falling through the fire pole

hole. In order to prevail on this claim, Plaintiff must establish not only that the Lowe Defendants breached their duty to act reasonably and prudently when they offered the Hauoli St. house for rent without closing the fire pole hole, but that this breach of duty was a substantial factor in causing Plaintiffs' injuries. These are questions for the jury.

The rules for determining the responsibility of a negligent actor for harm which his conduct is a substantial factor in producing have been codified in § 435 of the Restatement (Second) of Torts:

> § 435.  Foreseeability of Harm or Manner of Its Occurrence
> (1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.
> (2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

Restatement (Second) Torts, § 435.

The Lowe Defendants contend that Defendant Severson's negligent removal of the railing was an intervening "superceding cause" that effectively breaks the chain of causation and thus constitutes the sole legal cause of Plaintiff's injury. See, e.g., Lowe Defendants' Pretrial Statement, p. 17.  Yet, the Court has already determined, in adjudicating the Lowe Defendants' motion for summary Judgment, that the question of whether it was foreseeable that the tenants would remove the railing is a question for the jury. In light of the Lowe Defendants' admission in their

Pretrial Statement that they provided "strict instructions" to the Tenant Defendants "to refrain from removing or altering the iron safety railing surrounding the firepole/hole," Plaintiff has filed a motion in limine to preclude the Lowe Defendants from offering any evidence or argument that it was not foreseeable that one of the tenants would remove the railing. In any event, an intervening force, such as Defendant Severson's negligent removal of the railing, cannot be a superceding cause unless he *intentionally caused the harm* suffered by Plaintiff <u>and</u> *the harm* was not within the scope of risk created by the Lowe Defendants' conduct:

> § 442 B. Intervening Force Causing Same Harm as That Risked by Actor's Conduct
>
> Where the negligent conduct of the actor creates or increases the risk of a particular *harm* and is a substantial factor in causing that *harm*, the fact that the *harm* is brought about through the intervention of another force does not relieve the actor of liability, except where the *harm* is intentionally caused by a third person *and* is not within the scope of the risk created by the actor's conduct.

Restatement (Second) Torts, § 442B (italics added).  Comment "a" to § 442B explains that "the rule stated in this Section is a special application of the principle stated in § 435 (1), that the fact that the actor neither foresaw nor could have foreseen *the manner in which a particular harm is brought about* does not prevent his liability where the other conditions necessary to it exist." <u>Id.</u>, comment "a" (italics added). Comment "b" to § 442B is also instructive:

> b. If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, *it is immaterial to the actor's liability that the harm*

13

*is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate.* This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons which are not intentionally tortious or criminal. This is to say that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," *no matter how it is brought about*, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct.

Id., comment "b" (italics added).

Once the existence of a duty has been established as a matter of law, as it has here, the analysis moves to the next level of inquiry, which is the standard of conduct owed.[3] This issue, unlike the question of the existence of a duty, is a question of fact for the jury. The seminal Hawai`i case on this issue is Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 384 (1987). Knodle makes clear that "what is reasonable and prudent in the particular circumstances is marked out by the foreseeable range of danger." Id., at 385, 383. Evidence concerning the nature of risks within that "foreseeable range of danger" is relevant to showing that the Lowe Defendants did not act reasonably and prudently when

---

[3]    The Hawai`i Supreme Court recently noted that "duty ... is bounded by the foreseeable range of danger.'" Doe Parents v. Department of Education, 100 Hawai'i 34, 58 P.3d 545 (2002). The general rule is that a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct *with respect to all risks which make the conduct unreasonably dangerous.*" Wofford v. Eastern State Hosp., 795 P.2d 516, 519 (Okla. 1990) (quoting Tarasoff v. Regents of Univ. of Cal., 551 P.2d 334, 342 (1976) (italics added)).

they rented the premises without taking appropriate steps to remedy the dangerous

condition. The Knodle Court emphasized that it is the jury's role to determine the

standard of conduct to which the alleged tortfeasor is to be held, and that this

determination requires a balancing of the gravity and probability of the risks

against the utility of the conduct at issue:

> Whether the defendant had a duty to take reasonable action to protect the plaintiff from unreasonable risk of harm is, of course, a question for the judge. But what is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide. Put simply, perhaps simplistically, what is reasonable care on the part of the defendant is "what a reasonable and prudent person would ... have done under [the] circumstances." Wong v. City & County, 66 Haw. 389, 394- 95, 665 P.2d 157, 161 (1983) (quoting Martin v. Wilson, 23 Haw. 74, 88 (1915)). [footnote deleted]. "The conduct of [this mythical] person will vary with the situation with which he is confronted." W.P. Keeton, supra, § 32, at 175. For what is reasonable and prudent in the particular circumstances is marked out by the foreseeable range of danger. Bidar v. Amfac, Inc., 66 Haw. at 552, 669 P.2d at 159.
>
> Danger in this context "necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may possibly follow." W.P. Keeton, supra, § 31, at 170 (footnote omitted). The test of what is reasonably foreseeable is not one of a balance of probabilities. "That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care." Tullgren v. Amoskeag Manufacturing Co., 82 N.H. 268, 276, 133 A. 4, 8 (1926). The test is whether "there is some probability of harm sufficiently serious that [a reasonable and prudent person] would take precautions to avoid it." Id.; see also Griggs v. Firestone Tire & Rubber Co., 513 F.2d 851, 859 (8th Cir.), cert. denied, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); Moran v. Faberge, Inc., 273 Md. 538, 552-54, 332 A.2d 11, 20 (1975); Bean v. Ross Manufacturing Co., 344 S.W.2d 18, 25 (Mo.1961). "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to

generate a duty of precaution." W.P. Keeton, supra, § 31, at 171 (footnote omitted). And "[a]gainst this probability, and gravity, of the risk, must be balanced in every case the utility of the type of conduct in question." Id.

Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 387-388, 742 P.2d 377, 384-385 (footnotes deleted).

Knodle was a premises liability case arising out of the murder of a hotel guest, in which the decedent's father claimed that the hotel owed a duty to take reasonable steps to safeguard his daughter against the foreseeable criminal acts of third parties. The Knodle Court's analysis was a straight negligence analysis, with heavy reliance on W.P. Keeton, Prosser and Keeton on the Law of Torts (5th Ed., 1984). This reliance on Prosser and Keeton is instructive. Indeed, Prosser and Keeton reference "the quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all manner of occurrence." W.P. Keeton, § 43, at 299. The discussion that lead Prosser and Keeton to make this statement is also revealing:

> Foreseeability of consequences, or, as it is sometimes called, the risk of harm, is only one of the factors which are important in determining negligence. Into the scales with it must be thrown the gravity of the harm if it is to occur, and against both must be weighed the utility of the challenged conduct. But even the risk of harm itself, when the defendant is found to be negligent, is usually an aggregate risk of many possibilities.
>
> If a train is operated without a proper lookout, it is relatively easy to say that the total risk, made up of everything that can happen, be it probable or fantastic, is so great that the reasonable person of

ordinary prudence would not do this, and therefore there is negligence. But how easy is it, by a process of fragmentation of that risk, to sort it out into particular consequences, and to say that they are, or are not, such substantial parts of the total foreseeable risk that liability is to be attached to them? . . .

The problem is in no way simplified by the quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all manner of occurrence.

W.P. Keeton, § 43, at 298-299.

Knodle makes clear that the jury's responsibility "in every case" is to balance the probability and gravity of the risk against the utility of the type of conduct in question in order to determine the standard of conduct. Here, in assessing the reasonableness of the Lowe's decision to rent the house without sealing the fire pole hole, the utility of the fireman's pole must be balanced against the probability and gravity of the risks associated with the fire pole and hole. The primary risk associated with the fire pole was, of course, the risk that someone would fall through the fire pole hole and be seriously injured or killed. It is undisputed that the Lowes were aware of this risk when they offered the house for rent. Although it was foreseeable that a fall through the fire pole hole might occur for a variety of reasons -- including a fall through the hole after the removal of the guard rail by the tenant, a fall over the guard rail and through the hole, a fall through the hole after the gate was left open, or a fall while intentionally using the fire pole -- it would be improper to balance the utility of fireman's pole against only one possible manner of occurrence through which the risk of falling through

17

the fire pole hole might manifest. In other words, the balancing process prescribed by Knodle only makes sense if the jury is permitted to balance *the general risk of falling through the fire pole hole*, whatever the manner of occurrence, against all the utility of the fireman's pole. Tancredi v. Dive Makai Charters, 823 F.Supp. 778, 786 (D.C.Haw. 1993) ("It is not necessary that the exact manner of the accident or injury be foreseeable," citing Okada v. State, 1 Haw. App. 101, 614 P.2d 407 (1980)).

The Hawai`i appellate courts have made it clear that it determining the "scope of the risk," the appropriate inquiry is the general nature of the risk of harm, and not the manner of its occurrence. The decision by the Hawai`i Intermediate Court of Appeals in Leary v. Poole, 5 Haw.App. 596, 705 P.2d 62 (1985), is instructive. Leary was a wrongful death action arising out of an automobile accident in which the vehicle in which the plaintiff's decedent was riding stuck a guardrail that had been damaged *eight weeks earlier* when it had been struck by a vehicle driven by defendant Poole. Poole had collided into and damaged a portion of the guardrail, but the damaged section of guardrail, along with two sections of guardrail and the supporting posts, were removed by the towing companied that was summoned to remove the Poole vehicle from the accident scene. This section of guardrail was left unrepaired for the approximately eight weeks until the Leary accident, which involved a vehicle losing control and striking the exposed, unrepaired guardrail. The ICA rejected Poole's contention that it was not

foreseeable that his accident would cause another accident, and that the negligent acts and omissions of the tow company, the City, and the State constituted superceding causes that broke the chain of causation leading back eight weeks to his accident. Id., pp. 65-66. The Leary court relied on the Hawai'i Supreme Court's decision in Mitchell v. Branch & Hardy, 45 Haw. 128, 363 P.2d 969 (1961), in noting that "[I]t is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law." Id., p. 66, quoting Mitchell, 45 Haw. at 139, 363 P.2d at 976-977.

Similarly, in Taylor Rice v. State, 91 Haw. 60, 979 P.2d 1086 (1999), the Hawai'i Supreme Court addressed and rejected the State's argument that, even if its design of guard rails fell below the applicable standard of care, it could not have foreseen that the plaintiff would become intoxicated, fall asleep and drive up and over the guard rail as he allegedly did in that case. The Court stated that "the circumstances under which Leigh's car left the road and struck the guardrail were not so 'unusual' that another driver, exercising more care, would not have avoided the same result if he or she had left the road." Id., at 75, 1101.

Numerous courts have rejected the argument that a defendant failing to take precautions to guard against a risk of harm can avoid liability based on a lack of notice of the specific sequence of events or manner of occurrence causing injury.

In <u>Trude v. Martin</u>, 660 A.2d 626 (Pa. Super. 1995), the plaintiff was rendered quadriplegic when he was pushed from a brick wall by an assailant. The plaintiff, Trude, became involved in an altercation with one of the defendants, Martin, in a parking area outside Denati's Restaurant. The Court described the events leading to Trude's injury as follows:

> Martin became combative towards Trude, shouting and swinging wildly. Trude retreated up the stairs to the landing outside the kitchen door and pounded on the door. When Shellhouse did not open the door, Trude sat on the concrete capstone on top of the brick wall which surrounded the landing outside the kitchen door. Martin ascended the stairs and pushed Trude. Martin's push dislodged the concrete capstone on top of the wall, causing Trude to fall six feet to the ground below, fracturing his neck and rendering him quadriplegic. As a result of these events, Martin was convicted of aggravated assault . . . ."

Id., at 629. Trude sued Martin, Shellhouse (the night manager), Brown (the bartender), Denati's, and Denati's landlord, Equitable. Equitable was sued for negligence in failing to inspect and maintain the wall and the concrete capstone. <u>Id</u>. The <u>Trude</u> Court rejected Equitable's contention that Martin's actions constituted an intervening, superceding force that broke the chain of causation:

> Here, the jury heard ample evidence from which it could conclude that Equitable's negligent maintenance of the premises created a dangerous condition, specifically, the loose capstone which was in danger of falling off of the wall if enough weight rested on it at the wrong angle. Thus, the negligent maintenance of the capstone was a substantial factor in causing Trude's injuries. Furthermore, it was foreseeable that because of the existence of a dangerous physical condition on Equitable's land, a person on or around the wall could be injured as a consequence of the dangerous condition. Accordingly,

Equitable's negligent maintenance of the capstone was a concurrent cause of Trude's harm.

Id., pp. 628-629. In reaching this decision, the Court expressly relied on sections of the Restatement (Second) of Torts discussed above. Indeed, the Trude Court went on to hold that Equitable was not even entitled to a jury instruction regarding intervening, superceding cause:

> Where, as in this case, however, the facts are undisputed that the multiple causes of the plaintiff's harm were concurrent substantial factors in bringing about the plaintiff's injury, no question concerning superceding cause exists for the jury and no instruction thereon is warranted.

Id., p. 631.

In P.G. v. Dept. of Health and Human Services, 4 P.3d 326 (Alaska 2000), the Supreme Court of Alaska rejected the argument that the State, which failed to warn foster parents of the risk of violence posed by the child placed in their home, was not liable because it could not have anticipated that the foster child would sexually assault their children. The Court's reasoning is instructive:

> Negligence and causation necessarily involve foreseeable risks. But in this context foreseeability does not imply an ability to predict precise actions or injuries: "When the risk created causes damage in fact, insistence that the precise details of the intervening cause be foreseeable would subvert the purpose of that rule of law." Thus, Prosser and Keeton note that there is "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or the harm, and not its 'precise' nature, details, or above all manner of occurrence."

P.G., 4 P.3d at 334 (footnotes omitted).

The *en banc* Oregon Supreme Court conducted a similar analysis in <u>Stewart v. Jefferson Plywood Company</u>, 469 P.2d 783 (Ore. 1970), where a defendant whose employee negligently started a fire claimed it should not be held liable to an adjoining landowner who fell through the skylight of his building after climbing to his roof to fight the fire. The court concluded that, although falling through a poorly marked skylight was not a common cause of fire-related injury, "on the other hand it cannot be said that this setting for possible injury is so uncommon that a jury could not reasonably describe as foreseeable the risk of harm which it creates." <u>Id.</u> at 786-87.

The Court of Appeals of Oregon relied on the <u>Stewart</u> case in rejecting the contention of a contractor that its construction work at a hospital could not be a legal cause of an injury sustained by a hospital housekeeper when emptying the container she used to clean up water that seeped into the hospital during construction. <u>Dodge v. Darritt Construction</u>, 934 P.2d 591 (Or.App. 1997). The <u>Dodge</u> Court based its analysis on the following reasoning:

> As the <u>Stewart</u> court pointed out: whether a particular harm is deemed foreseeable may depend on how the risk of harm is characterized. If the harm is characterized in a general way, the risk is more likely to be deemed foreseeable than if it is characterized in a specific manner. "Stewart itself made clear that the court meant generalized risk of the types of incidents and injuries that occurred rather than the predictability of the actual sequence of events."

<u>Id.</u>, p.594 (quoting <u>Fazzolari v. Portland School Dist.</u>, 734 P.2d 1326).

The Montana Supreme Court, in <u>Kolar v. Bergo</u>, 280 Mont. 262, 929 P.2d 867 (1996), held that there was a genuine issue of material fact regarding the question of whether a practical joke proximately caused a traffic accident. <u>Kolar</u> involved a claim by a motorcyclist who was struck and injured by a motorist who, in response to a practical joke, was rushing home to check on his nine-year-old daughter. The Montana Supreme Court overturned the trial court's grant of summary judgment to the practical jokers, who had argued that it was unforeseeable that their joke would cause a traffic accident.

The Maine Supreme Court reached a similar conclusion in <u>Orr v. First National Stores, Inc.</u>, 280 A.2d 285 (Me. 1971), a case in which a young child was injured while swinging on bars placed adjacent to the automated doors of a supermarket. The court observed:

> It should be emphasized that it is unessential that the precise manner in which injuries might have occurred, or were sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of injury was within this range.

<u>Orr</u>, 280 A.2d at 794 (emphasis supplied).

The Supreme Court of Florida, in <u>McCain v. Florida Power Corporation</u>, 593 So.2d 500 (Fla. S. Ct. 1992), referenced § 435 of the Restatement (Second) of Torts in observing that "it is immaterial that the defendant could not foresee the precise manner in which the injury occurred or its exact extent." <u>Id.</u>, p. 503. The

Court noted, however, that "[t]he law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." Id.

In Stanford v. Kuwait Airways Corporation, 89 F.3d 117 (2nd Cir. 1996), the Second Circuit Court of Appeals cited the McCain case in reversing a District Court decision granting judgment as a matter of law to an airline that transported hijackers to another airline's connecting flight, which was hijacked. In reaching its decision, the Second Circuit rejected the airline's contention that the intervening acts of third parties broke the chain of causation, noting that "neither the precise hazard not the exact consequences [of the third party's negligent act] need be foreseen":

> The causative link is not broken by the negligent conduct of a third person when such conduct is normal or foreseeable under the circumstances. . . . The crucial aspect of this inquiry is a determination of "how far the first wrongdoer should be charged with forecasting the future results of his conduct." . . . "Neither the precise hazard not the exact consequences [of the third party's negligent act] need be foreseen." . . . Questions regarding what is normal or foreseeable, like other questions of proximate cause, are generally issues for the trier of fact. . . .

Id., p. 127 (citations omitted).

One of the most frequently cited cases reflecting the settled proposition that what is required to be foreseeable is the general character of the event or harm and not its precise nature or manner of occurrence, is the California Supreme Court's decision in Bigbee v. Pacific Telephone and Telegraph Company, 34 Cal 3rd 49, 665 P.2d 947, 192 Cal. Rptr. 857 (1983). The plaintiff in Bigbee was injured when

an automobile, driven by a drunk driver, veered off the road and struck a telephone booth located fifteen feet from the side of the roadway, in which the plaintiff was standing. The trial court granted summary judgment for the defendant telephone company, concluding that the accident was unforeseeable as a matter of law. 34 Cal 3rd at pp. 52-55. The California Supreme Court reversed, stating that it was reasonably foreseeable that a car might crash into the phone booth and injure the plaintiff. The court began its analysis with the observation that "ordinarily, foreseeability is a question of fact for the jury." 665 P.2d at 950. The court then reasoned as follows:

> ". . . foreseeability is not to be measured by what is more probable then not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct. One may be held accountable for creating even the risk of a slight possibility of injury if a reasonably prudent person would not do so. Moreover, it is settled that what is required to be foreseeable is the general character of the event or harm – e.g., being struck by a car while standing in a phone booth [not its precise nature or manner of occurrence.]"

Id., at 952, citations and internal marks omitted. The Bigbee court went on to reject the argument that the defendant was excused from liability because the plaintiff's injuries were the result of the intoxicated driver's negligent or reckless acts. Id., at 952. See also, Wiener v. Southcoast Childcare Centers, Inc., 132 Cal Rptr 2nd 883 (2003); Jackson v. Rider Truck Rental, Inc., 20 Cal. Rptr. 2nd 913, 918 (1993); Luisi v. Foodmaster Supermarkets, , 739 N.E.2d 702 (Mass. App. 2000) ("In deciding on the foreseeability of the risk of injury, all the circumstances

are examined."); <u>DiPonzio v. Riordan</u>, 657 N.Y.S.2d 377 (N.Y. 1997) (conduct is considered negligent when it tends to subject another to an unreasonable risk of harm arising from one or more particular foreseeable hazards).

The foregoing authorities, including the Hawai`i Supreme Court's seminal decision in <u>Knodle</u> and applicable sections of the Restatement, require: (1) that risk of harm be broadly defined here to be the risk that someone would fall through the fire pole hole; and (2) that the task of balancing that risk against any utility the fireman's pole might have be left to the jury. In order for the jury to make an informed decision regarding these issues, it is entitled to hear all evidence that is relevant to Plaintiff's claim that the Lowe Defendants failed to take reasonable steps, prior to offering the house for rent, to eliminate the known risk that a houseguest would be seriously injured or killed by falling through the fire pole hole. This evidence includes evidence that:

- The Lowe Defendants knew at the time they leased their property to the tenants that the fireman's pole was "not permitted";

- The Lowe Defendants knew at the time they leased their property to the tenants that the fireman's pole and the hole surrounding the fireman's pole constituted a possible hazard, even with the guard rail in place;

- The Lowe Defendants knew or should have known at the time they leased their property that the risk associated with the fireman's pole and hole was that

someone would be seriously injured or killed by falling through the fire pole hole;

- The Lowe Defendants knew or should have known at the time they leased their property that there were a number of different "manners of occurrence" which might result in someone being killed or seriously injured by falling through the fire pole hole – for example, they knew or should have known that the protective railing might be removed, or that the gate in the railing might be left open, or that children would open the gate or climb over the railing, or that someone would accidentally fall over the railing and through the hole, or that someone would be injured while playing on the fireman's pole;

- The Lowe Defendants warned the tenants, at the time the lease was signed, about the danger that someone would fall through the fire pole hole;

- At the time the lease was signed, Mr. Lowe specifically warned against removal of the railing from around the fire pole hole;

- The Lowe Defendants gave the Tenant Defendants "strict instructions . . . to refrain from removing or altering an iron safety railing surrounding the firepole/hole."

- The Lowe Defendants included a "Fireman's Pole" Clause in the written lease specifically noting that the fireman's pole was "a unique and possibly

hazardous architectural feature of the property," to be used by the tenants only at their own risk;

- The "Fireman's Pole" Clause in the lease was intended to protect the Lowe Defendants from liability in the event a tenant or a guest of a tenant was killed or injured by falling through the fire pole hole;

- If the Lowe Defendants had performed a reasonable inspection of the property prior to offering it for rent – focusing in particular on aspects of the property that they knew were "not permitted," such as the fireman's pole – they would have determined that Hawai`i's Landlord-Tenant Code prohibited the rental of the property;

- The fireman's pole had no utility other than as an inherently dangerous recreational device, and was actually an undesirable architectural feature because it represented a fire hazard and permitted sound and light to move between the living room and the upstairs master bedroom; and

- The Lowes knew at the time they leased the property that the fireman's pole and hole could be "pretty easily" eliminated.

Clearly, this evidence meets the minimal standards of relevance set forth in Rule 401 of the Federal Rules of Evidence. Moreover, there is no realistic threat of unfair prejudice, since the jury will be instructed that it is Plaintiff's burden to prove that the failure of the Lowe Defendants to exercise reasonable care to protect

against the risk that someone would fall through the fire pole hole was a substantial factor in causing Plaintiff's injuries. Accordingly, this Court should find the evidence is admissible under the liberal standards of the Federal Rules of Evidence.

## IV. IT IS PROPER FOR THE COURT TO ADJUDICATE THESE EVIDENTIARY ISSUES BY WAY OF A MOTION IN LIMINE

The November 3, 2005 Order did not discuss the standards for admissibility under the Federal Rules of Evidence, and neither party raised or presented evidentiary issues in connection with the Lowe Defendants' Motion for Summary Judgment. Moreover, these evidentiary issues were not briefed or argued by the parties in connection with the Lowe Defendants' Motion for Summary Judgment. It therefore seems possible that the Court did not intend for its statements concerning the height of the railing to be construed as a ruling on evidence.

Even if the Court did intend for its comments to pertain to the admissibility of evidence at trial, Plaintiff is still entitled and in fact obliged to seek reconsideration and clarification of the matter under the Federal Rules of Evidence. Federal Rule of Evidence 103 provides that a proponent of evidence is required to seek to present evidence at trial in order to preserve an objection for appeal unless "the court makes a definitive ruling on the record admitting or excluding evidence." Fed. R. Evid. 103(a). In the Commentary to the Rule, the Advisory Committee notes that its purpose is to:

Impose[] the obligation on counsel to clarify whether an *in limine* or other evidentiary ruling is definitive when there is doubt on that point. *See, e.g., Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 520 (3d Cir. 1997) (although "the district court told plaintiffs' counsel not to reargue every ruling, it did not countermand its clear opening statement that all of its rulings were tentative, and counsel never requested clarification, as he might have done.").

Fed. R. Evid. 103 Advisory Committee Notes (2000 Amendments). Since the Court's November 3, 2005 Order was not phrased as a definitive ruling on evidence, Plaintiff respectfully submits that she is required to present this request to make a clear record of the ruling in the event she must appeal.

The Rule 103 Advisory Committee further notes that, "[e]ven where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered." Fed. R. Evid. 103 Advisory Committee Notes (2000 Amendments). The Court also retains the right to revisit all rulings on partial summary judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. See, e.g., United States v. Desert Gold Mining Company, 433 F.2d 713, 715 (9th Cir. 1970). In this case, reconsideration is particularly appropriate because these evidentiary issues were not raised, briefed or argued by the parties in connection with the Lowe Defendants' Motion for Summary Judgment. Cf. Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir.2003) (reconsideration under Rule 54(b) is "subject to the caveat that 'where litigants have once battled for

the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

Plaintiff respectfully submits that, under these rules, and for the reasons set forth herein, the Court should clarify and, if necessary, revise its November 2, 2005 Order to make clear that Plaintiff will be permitted to offer at trial all evidence relevant to her claim that the Lowe Defendants breached their duty to take reasonable steps to protect against the known danger that someone would be seriously injured or killed by falling through the fire pole hole.

## V.    CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that her Motion in Limine # 1 be granted.

DATED: Honolulu, Hawai`i, February 13, 2006.

MICHAEL K. LIVINGSTON
MARK S. DAVIS
Attorneys for Plaintiffs