IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LISA ROMERO,<br><br>        Plaintiffs,<br><br>vs.<br><br>JEFFREY LOWE; LINDA LOWE; MATTHEW RAY SEVERSON; BRETT SCHELAND; BENJAMIN ALLEN WILDER; MINDY WILDER; GEORGE KLAUS, III; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10;<br><br>        Defendants. | **CV04-00285 DAE-BMK**<br>(Other Non-Vehicle Tort)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |
| JEFFREY LOWE AND LINDA LOWE,<br><br>        Third-Party Plaintiffs,<br><br>vs.<br><br>STEVEN J. KOTT AND KOTT, INC.<br><br>        Third-Party Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION**

Plaintiff Lisa Romero moves this Court in limine to preclude Defendants Jeffrey and Linda Lowe from offering evidence or argument to suggest that they discharged their duty under Hawaii Landlord-Tenant Code or their duty of reasonable care because there was a railing around fire pole and the three- to four-foot wide hole in the master bedroom floor when they rented the premises to the Tenant Defendants. Specifically, Plaintiff seeks an order precluding the Lowe Defendants from offering any evidence or argument at trial to show that the railing somehow cured the dangerous condition associated with the fire pole/hole, or that the fire pole/hole was code compliant, or that the rental of the house did not violate section 521-42 of the Landlord-Tenant Code, or that the railing discharged the Lowe Defendants' duty of reasonable care to protect or warn against a known dangerous condition on their premises.

**The Court need only address and adjudicate this Motion in Limine in the event that it rules that Plaintiff may not offer evidence at trial that the fireman's pole and hole were not code compliant at the time that the Lowe Defendants offered the Hauoli St. main house for rent.** Plaintiff's Motion in Limine No. 1 seeks an order permitting Plaintiff to offer evidence at trial to show that the Lowe Defendants breached their duty to protect against the known risk that someone would be killed or seriously injured by falling through the fire pole hole. If Plaintiff's Motion in Limine No.1 were to be granted in its entirety, Plaintiff

2

would be permitted to put on evidence regarding the deficient height of the railing and the fact that the fireman's pole was not compliant with the building code provision specifying the minimum height requirement for guard rails. It is possible, however, that the Court will conclude that it is unnecessary to litigate the issue of whether the fireman's pole and hole were, in fact, code complaint where it is undisputed that the Lowe Defendants knew, at all relevant times, that it was a unique and dangerous architectural feature that was "not permitted." The purpose of this Motion in Limine is to ensure that the Lowe Defendants are not permitted to offer evidence or argument to show that the fireman's pole was a permissible or a code complaint structure in the event that Plaintiff is precluded from offering evidence and argument that it was not.

It is undisputed in this case that the Lowe Defendants were informed by the Sellers when they purchased the 111 Hauoli St. property that the fire pole was "not permitted." It is also undisputed that the Lowe Defendants knew at the time they rented the house to the Tenant Defendants on April 8, 2001, approximately one month after their purchase of the property, that the fireman's pole constituted a dangerous condition on the rental premises, even with the railing still in place. The Lowe Defendants acknowledge that the danger associated with the fire pole was that someone would be seriously injured or killed as a result of falling through the hole surrounding the fire pole. Nonetheless, the Lowe Defendants admit that they

3

did not determine, prior to renting the house to the Tenant Defendants, that the fire pole was permitted, or that it was code compliant. Here is the testimony of Mr. Lowe on this issue:

> Q. Mr. Lowe, I'm almost finished. There is just one point I want to clarify. Do you recall in the real property disclosure statement that the disclosure was made by the Kotts that the fire pole was, quote, not permitted, end of quote? Do you remember that?
> A. Yes.
> Q. And it's my understanding of your testimony that you never considered whether that meant that it was not allowed or meant that it was allowed, but there simply hadn't been a permit issued with respect to it. Is that correct?
> A. Yes.
> Q. Do you recall ever asking anybody whether or not the fire pole was allowed? . . .
> A. Only to the extent that I inquired as to what I should do about the items in the disclosure that were not permitted, but not -- I made no specific inquiry limited to the fire pole.
>  BY MR. LIVINGSTON:
> Q. And in connection with your review of the public records, you did not determine or could not determine whether or not the fire pole was allowed; correct?
> A. Correct.
> Q. And in connection with the real property inspection, you never asked the inspector whether or not the fire pole was allowed; correct? . . .
> A. I don't recall that the inspector brought it up and I don't recall that I brought it up. . . .
> BY MR. LIVINGSTON:
> Q. Let me just refer to the as-is addendum. You're advised to inspect all public records, have a professional home inspection and to make reasonable inquiry regarding individual concerns. So let me just ask generally: Apart from anything that we have now covered, did you make any inquiry with respect to the question of whether or not the fire pole was allowed?
> A. No.

Deposition of Jeffrey Lowe, taken April 21, 2005, pp. 176-178. Indeed, the Lowe Defendants considered removing the fire pole prior to offering the house for rent,

4

precisely because they knew it was possibly hazardous and that it was "unpermitted." They decided against this option despite the fact that they were informed that the fireman's pole would be "pretty easy to take out." The Lowe Defendants therefore knew that they were renting a house to the Tenant Defendants which had a dangerous condition that was "not permitted." When Ms. Lowe was asked whether, in retrospect, she believed it had been imprudent to lease the premises without closing off the fire pole hole, she responded, "I don't know."

The Court ruled, in connection with the Lowe Defendants' motion for summary judgment, that "information regarding the alleged non-conformity of the railing to the building code is simply irrelevant." *Order (1) Granting Third Party Defendants Steven J. Kott and Kott Inc.'s Motion for Summary judgment filed 3/31/05; Order (2) Granting in Part and Denying in Part Defendant Matthew Ray Severson's Motion for Summary Judgment filed 3/23/05; Order (3) Granting in Part and Denying in Part Defendants Jeffrey Lowe and Linda Lowe's Motion for Summary Judgment filed 3/7/05; Order (4) Granting in Part and Denying in Part Defendant George Klaus, III, and Brett Scheland's Motion for Summary Judgment filed 5/11/05* filed on November 3, 2005 (hereafter "November 3, 2005 Order") at 13. This was not an issue that was directly raised by the Lowe Defendants in their motion for summary judgment, and it was neither briefed by the parties nor discussed at the oral argument on the Lowe Defendants' motion. As set forth in

Plaintiffs' Motion in Limine No. 1 To Permit Plaintiff to Offer Evidence at Trial to Show that the Lowe Defendants Breached Their Duty to Protect Against the Known Risk that Someone Would Be Killed or Seriously Injured by Falling Through the Fire Pole Hole, Plaintiff contends that the Court's ruling should not be interpreted to preclude the jury from hearing the critically important and highly relevant evidence summarized in the preceding paragraph. Yet none of this evidence requires an inquiry into the height of the railing or the question of whether the railing was code compliant. The fact is, the Lowe Defendants were told specifically that the fire pole was "not permitted," and they assumed that this was a true statement. This Motion in Limine simply seeks an order precluding the Lowe Defendants from now contending that the fireman's pole and hole were permitted structures, or that they were code compliant, or that the railing discharged the Lowe Defendants' duty of reasonable care to protect or warn against a known dangerous condition on their premises. Obviously, the Lowe Defendants cannot be permitted to offer evidence or argument that the fireman's pole was permitted or code complaint, or that the railing discharged their duty of reasonable care, while Plaintiff is precluded from offering evidence to prove that the fireman's pole was, in fact, "not permitted," as the Lowe Defendants were told and as they believed at the time they offered the house for rent, and that the railing violated the safety requirement for railing height in the Building Code.

6

I.  **STATEMENT OF FACTS**

The Lowes rented their home at 111 Hauoli Street in Kailua to a group of young Naval Officers in April 2001 with a three- to four- foot open hole in the floor of the master bedroom. The hole allowed light and sound to travel between the bedroom and the living room below. The hole was equipped with a fire pole, which allowed persons in the bedroom to slide down ten to twelve feet to the living room.

When the Lowe Defendants purchased the Hauoli Street home in January 2001, they were informed by the prior owner that the fire pole was "not permitted." They did not determine why the fire pole was "not permitted" prior to offering the house for rent to the Tenant Defendants.

It is undisputed that the Lowe Defendants knew that the hole and fire pole constituted a "possibly hazardous architectural feature," even with the railing in place, at the time they offered the house for rent. Both Mr. and Mrs. Lowe confirmed that the danger associated with the fire pole was that someone would be seriously injured or killed by falling through the hole. This, of course, is precisely the risk that led to Plaintiff's injuries.

Mrs. Lowe did not feel the hole and pole were appropriate to the interior design of the house and wanted them removed. She also had concerns about the fireman's pole and associated hole as a possible hazard that she and her husband

knew was not permitted. She therefore investigated the option of removing the fire pole and sealing off the hole, and was informed that it would be "pretty easy" to take it out. According to Mrs. Lowe, she asked Matt Severson and the Wilders whether they wanted to keep the fireman's pole or whether they wanted it removed, and Mr. Severson responded that he wanted to keep it because "he thought it was cool or something to that effect." Neither Matt Severson nor the Wilders recall any offer by the Lowe Defendants to have the fireman's pole removed. When asked whether, in her judgment, there was any utility to the fireman's pole other than as a recreational device, she responded, "I don't know." When Ms. Lowe was asked whether, in retrospect, she believed it had been imprudent to lease the premises without closing off the fire pole hole, she responded, "I don't know."

The Lowe Defendants knew or should have known at the time they rented the premises that there was a risk that the tenants might remove the railing that surrounded the fireman's pole and hole. Indeed, the Lowe Defendants admit that they gave the Tenant Defendants "strict instructions . . . to refrain from removing or altering an iron safety railing surrounding the firepole/hole . . . ." Lowe Defendants' Pretrial Statement, p. 2. Defendant Mindy Heber (fka Wilder) confirmed this in her deposition, where she testified that the Lowe Defendants specifically told her, at the time she signed the lease, not to remove the guardrail

8

from around the fire pole. It is hardly surprising that the Lowe Defendants foresaw the possibility that the tenants would remove the railing. They knew or should have known that the tenant of the upstairs bedroom might desire to cover the hole, since the three- to four- foot opening in the floor substantially invaded his privacy. They knew or should have known that the railing intruded into the bedroom space in a way that a tenant might find objectionable, especially since Mrs. Lowe did not like the pole for "aesthetic reasons." They knew or should have known that the railing substantially limited the wall space available in the room to place a desk or dresser. Indeed, the dresser that was placed on the wall next to the railing at the time they purchased the house substantially overlapped the doorway to the bathroom. And they knew or should have known how easy it would be to remove the railing. Defendant Severson testified that the railing was supported only by four stanchions, each of which was attached to the floor, through the carpet, by four 2 1/2 inch screws which he easily removed with a socket wrench. The railing was not attached to the walls. One of the few non-party witnesses who slept in Mr. Severson's bedroom and thus has personal knowledge about the railing, described it as "very flimsy" and "very short."

Plaintiff plans to offer testimony (including expert opinions) and argument to support a finding that the fireman's pole and hole, even with the railing in place,

posed an unreasonably dangerous condition at the time the Lowe Defendants offered the premises for rent. The evidence will show that the rental of the Hauoli St. house with a dangerous condition that was not permitted constituted a violation of § 521-42 of the Landlord-Tenant Code, and that a reasonable landlord with the knowledge and information available to the Lowe Defendants would have permanently covered the hole in the master bedroom and removed the fire pole prior to leasing the house. This negligent failure of the Lowe Defendants to seal the hole in the master bedroom floor prior to making the property available for rental was a substantial factor in causing Plaintiff's injuries.

II. **IF PLAINTIFF IS PRECLUDED FROM OFFERING EVIDENCE THAT THE FIREMAN'S POLE VIOLATED THE BUILDING CODE BECAUSE THE RAILING WAS TOO LOW, THE LOWE DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OR ARGUMENT TO SHOW THAT THE FIREMAN'S POLE WAS PERMITTED OR CODE COMPLIANT, OR THAT THE RAILING MADE THE PREMISES SAFE**

This Court held in its November 3, 2005 Order that "information regarding the alleged non-conformity of the railing to the building code is simply irrelevant." November 3, 2005 Order at 13. According to the Court, Plaintiff's accident "is distinguishable from the hypothetical accident that might or might not have occurred had Plaintiff struck a railing of any height." Id. The Court concluded that "*any inquiry* into whether Plaintiff 'might well have fallen over the railing'

10

had the railing in fact still been in place, would require the fact finder to engage in impermissible speculation." Id. (emphasis supplied).[1]

The purpose of this motion is to clarify that, in the event that the Court precludes Plaintiff from offering evidence that the railing was too short to meet the minimum safety standard set out in the Building Code, it should similarly preclude the Lowe Defendants from offering evidence or argument to suggest that the fireman's pole was permitted or code complaint, or that the railing was sufficient to protect those who might come in contact with it from the risk of falling through the hole. In other words, in accordance with the Court's ruling that the fate of a hypothetical person who may have struck the railing is not relevant to resolving this dispute, any evidence that the railing would have protected that hypothetical person should be barred. Order at 13. If Plaintiff is precluded from testifying that a hypothetical person could have fallen, the Lowe Defendants should be precluded from offering evidence or argument that the railing offered sufficient protection to that hypothetical person, or that the hypothetical person would have in fact been protected. Based on this Court's ruling, the Lowe Defendants' evidence would not tend to prove any fact of consequence in this litigation, and does not meet the

---

[1] There is both lay and expert testimony in this case that the railing was too short to prevent a hypothetical person from falling over the railing and through the hole. Certainly this testimony should be allowed if the Lowe Defendants are permitted to testify that they believed the railing to be of sufficient height and strength to protect against a person falling over the railing and through the hole.

11

standard for relevance under Rule 401 of the Federal Rules of Evidence. Even if the evidence is somehow found to have relevance in the eyes of the Court, such relevance is clearly outweighed by the tendency to mislead and the threat of prejudice under Rule 403 of the Federal Rules of Evidence. See Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991) (evidence that would confuse and mislead the jury on the standard of care was properly excluded).

The Lowe Defendants simply cannot be permitted to offer evidence or argument that the fire pole was "permitted" or code complaint without opening the door to all of the evidence that proves that the fire pole was, in fact, "not permitted," as the Lowe Defendants were told and as they believed at the time they offered the house for rent. In fact, the evidence is irrefutable that the fireman's pole was not permitted at the time the Lowe Defendants offered the Hauoli St. house for rent. The Lowes should not be allowed to capitalize on the Court's ruling by suggesting that the fire pole was permitted or code complaint.

Finally, and for the same reasons, the Lowe Defendants should be precluded from offering evidence or argument to suggest that the presence of the railing discharged their duty under Hawaii's Landlord-Tenant Code or their duty of reasonable care in connection with the admittedly dangerous condition posed by the fireman's pole and hole.

## III. CONCLUSION

As explained above, it is essential that the jury hear the undisputed evidence that the Lowe Defendants offered the house for rent to the Tenant Defendants knowing that there was a danger that someone would be killed or seriously injured falling through the fire pole hole, and knowing that the fireman's pole was not permitted. The admission of this evidence does not require an inquiry into the height of the railing or the question of whether the railing was code compliant. The fact is, the Lowe Defendants were told specifically that the fire pole was "not permitted," and they assumed that this was a true statement. In essence, this Motion in Limine simply seeks an order precluding the Lowe Defendants from now contending that the fire pole was permitted or code compliant, or that the railing discharged their duty of reasonable care.

If the Court intends to preclude Plaintiff from introducing evidence to show the railing around the hole and pole at 111 Hauoli Street was *not* sufficient to protect against the known danger that someone would be killed or seriously injured by falling through the fire pole hole, the Lowe Defendants should be similarly precluded from offering evidence and argument to show that it was a sufficient safety device. Specifically, Plaintiff seeks an order precluding the Lowe Defendants from offering any evidence or argument at trial to show that the railing somehow cured the dangerous condition associated with the fire pole/hole, or that

the fire pole/hole was code compliant, or that the rental of the house did not violate section 521-42 of the Landlord-Tenant Code, or that the railing discharged the Lowe Defendants' duty of reasonable care to protect or warn against a known dangerous condition on their premises. For the reasons set forth above, Plaintiff respectfully requests that her Motion in Limine No. 2 be granted.

DATED: Honolulu, Hawaii, February 13, 2006.

_____
MICHAEL K. LIVINGSTON
MARK S. DAVIS
Attorneys for Plaintiffs