IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LISA ROMERO,<br><br>          Plaintiffs,<br><br>vs.<br><br>JEFFREY LOWE; LINDA LOWE; MATTHEW RAY SEVERSON; BRETT SCHELAND; BENJAMIN ALLEN WILDER; MINDY WILDER; GEORGE KLAUS, III; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10;<br><br>          Defendants. | CIVIL NO. 04-00285 DAE-BMK<br>(Other Non-Vehicle Tort)<br><br>MEMORANDUM IN SUPPORT OF MOTION |
| JEFFREY LOWE AND LINDA LOWE,<br><br>          Third-Party Plaintiffs,<br><br>vs.<br><br>STEVEN J. KOTT AND KOTT, INC.<br><br>          Third-Party Defendants. | |

## MEMORANDUM IN SUPPORT IN SUPPORT OF MOTION

The documentary and deposition record in this case is replete with references to renter's insurance, homeowner's insurance, and medical insurance. These references are found in a number of different contexts. Not surprisingly, references to Plaintiff's medical insurance are found throughout the medical records (including the medical billing statements). There are also references to Plaintiff's medical coverage found in communications among the parties and in deposition testimony. The references to renter's insurance and homeowner's insurance are also found in communications among the parties and in deposition testimony, as well as in recorded statements taken by both the tenants' insurer and homeowners' insurer regarding Plaintiff's fall through the fire pole hole. This Motion in Limine seeks to preclude any of these references to insurance from reaching the jury.[1]

It has long been settled that evidence is not admissible that tends to show either that the Defendant is insured or that he is not insured. For example, the

---

[1] Of course it is permissible for counsel or the Court to inquire on voir dire as to the potential jurors' interest in, or connection with, indemnity insurance companies. Carr v. Kinney, 41 Haw. 166, (Supreme Court of the Territory of Hawaii, 1955). (Cf. Cenal v. Ragunton (106 Haw. 298, 340, 104 P.3d 336, 2004)).

2

Supreme Court for the Territory of Hawaii held in <u>Choy v. Otaguro</u>, in 1932, that evidence of insurance or lack of insurance is "ordinarily utterly irrelevant" to the issues involved in the trial of an action for personal injuries:

> It is too clear to admit of doubt that ordinarily in a trial of an action for personal injuries, after the jury is sworn, evidence is not admissible tending to show either that the defendant is insured or that he is not insured. It is ordinarily utterly irrelevant to the issues in such a case whether a policy of insurance has been issued . . ..

<u>Choy v. Otaguro</u>, 32 Haw. 543 (Terr. Haw. S. Ct. 1932). Accordingly, such evidence is inadmissible under Rule 402, FRE, which succinctly provides that "evidence which is not relevant is not admissible."

Additional support for the exclusion of any reference to insurance coverage or payments is found in the Federal Rules of Evidence. Rule 411 of the Federal Rules of Evidence provides as follows:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Rule 411, Federal Rules of Evidence ("FRE"). Here, there is no legitimate reason to allow evidence of insurance to reach the jury.

Finally, even if there was some tenuous relevancy to the existence or non-existence of insurance coverage, that evidence properly should be excluded under Rule 403, FRE, which provides as follows:

3

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403, FRE.

It is also clear, based on settled law, that evidence of Plaintiff's medical insurance, including evidence of payments made by her medical insurer related to the injury she sustained in her fall, is inadmissible. The recent decision by the Hawaii Supreme Court in <u>Bynum v. Magno</u>, 106 Haw. 81 (2004), answering questions certified to the Hawaii Supreme Court by the United States District Court for the District of Hawaii (Chief Judge Ezra), provides clear guidance on this issue. In <u>Bynum</u>, the Hawaii Supreme Court answered two questions certified to it by the Federal District Court:

> Where a plaintiff's healthcare expenses are paid by Medicare and/or Medi-cal, does the discounted amount paid to a healthcare provider by [Medicare] and Medi-Cal constitute the amount that should be awarded as medical special damages to a plaintiff in a negligence action? In this circumstance, is evidence of amounts billed in excess of the amount [ ] paid irrelevant and inadmissible?

<u>Bynum v. Magno</u>, 106 Haw. 81, 82 (Haw. S. Ct. 2004).

In response to the first question, the <u>Bynum</u> court concluded that "the collateral source rule applies to prevent the reduction of a plaintiff's award of damages to the discounted amount paid by medicare/medicaid." <u>Id</u>., at 89. The court's analysis makes it clear that this decision would apply equally to private

4

insurance plans and even gratuitous medical services. Id., at 94. The Hawaii Supreme Court relied heavily on the decision of the Supreme Court of Wisconsin in Elsworth v. Schelbrock, 611 N.W. 2nd 764 (2000), which it described as exemplifying the jurisdiction's holding that the reasonable value of medical services should be determined in light of the standard rates, rather than the amount paid to medicare/medicaid. Id., at 89. The Bynum Court quoted the following language from the Elsworth decision:

> The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the *reasonable value* of medical and nursing services reasonably required by the injury. This is a recovery for their value and *not the expenditures actually made or obligations incurred.*

Id., at 90 (emphasis added by Hawaii Supreme Court) (quoting Elsworth, 611 N.W. 2nd at 769, quoting 22 Am.Jur.2nd Damages, Section 207 (1965).

The Bynum court went on to observe that its conclusion that a plaintiff is entitled to recover the reasonable value of medical services and is not limited to the expenditures actually paid is consistent with the established practice in Hawaii courts for determining special damages for medical services, as embodied in Hawaii's standard form jury instructions. Indeed, the court quoted Hawaii Civil Jury Instruction No. 8.9 in footnote 25, as follows:

> If you find for plaintiff(s) on the issue of liability, plaintiff(s) is/are entitled the damages in such amount as in your judgment will fairly and adequately compensate him/her/them for the *injuries* which he/she/they suffered. In deciding the amount of such damages, you

5

> should consider: . . . (3) the *reasonable value of the medical services* provided by physicians, hospitals, and other health care providers, including the examinations, attention and care, drugs, supplies, and ambulance services, reasonably required and actually given in the treatment of plaintiff(s) and the *reasonable value of all such medical services* reasonably probable to be required in the treatment of plaintiff(s) in the future.

Bynum, 106 Haw. at 92, n. 25.

The Bynum court next moved to the second question certified by the Federal District Court, holding that "the standard rates are relevant and should be admissible for establishing the reasonable value of medical cost constituting such special damages." Id., at 94. The Bynum court went on, however, to state its agreement with the Supreme Court of Ohio that *payments made by a collateral source are inadmissible*:

> Moreover, we agree with the statement of the Supreme Court of Ohio that receipt of such payments should not be admitted in evidence to reduce damages "[s]ince, by the collateral source rule, the receipt of collateral source benefits is deemed irrelevant and immaterial on the issue of damages[.]" . . . The Ohio court reasoned that "[t]he entire theory of the collateral source rule is to keep the jury from learning anything about the collateral income so that it will not influence the decision of the jury" for the purpose of reducing the award of damages.

Id., at 94, quoting Wolfe v. Whipple, 251 N.E.2d 77, 82 (Ohio S. Ct. 1970).

6

For the reasons set forth above, it is clear that the jury, once it is impaneled, should hear no reference whatsoever to renter's insurance, homeowner's insurance, or medical insurance coverage or payments.

DATED: Honolulu, Hawaii, February 13, 2006.

                                                          _____
                                                          MICHAEL K. LIVINGSTON
                                                          MARK S. DAVIS
                                                          Attorneys for Plaintiffs