IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LISA ROMERO,<br><br>        Plaintiffs,<br><br>vs.<br><br>JEFFREY LOWE; LINDA LOWE; MATTHEW RAY SEVERSON; BRETT SCHELAND; BENJAMIN ALLEN WILDER; MINDY WILDER; GEORGE KLAUS, III; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10; DOE PARTNERSHIPS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10;<br><br>        Defendants. | CIVIL NO. 04-00285 DAE-BMK<br>(Other Non-Vehicle Tort)<br><br>**DECLARATION OF JAMES C. MARTIN** |
| JEFFREY LOWE AND LINDA LOWE,<br><br>        Third-Party Plaintiffs,<br><br>vs.<br><br>STEVEN J. KOTT AND KOTT, INC.<br><br>        Third-Party Defendants. | |

**DECLARATION OF JAMES C. MARTIN**

I, James C. Martin, declare and state that:

1.  I make this statement based on personal knowledge.

2.  I work as an investigator for the Honolulu law firm of Davis Levin Livingston Grande.

3.  My work routinely involves contacting witnesses for interviews seeking information regarding case issues. My supervisor is Michael K. Livingston, counsel for Plaintiff Lisa Michelle Romero herein.

4.  On or around January 19, 2006, Mr. Livingston showed me a letter that appeared to be signed by a Dr. Patricia Baumann, who I know to be an Atlanta based medical doctor providing pain management services to Ms. Romero. The letter was addressed to Mr. Ward Fujimoto, attorney for Defendants Jeffrey and Linda Lowe in this matter.

5.  Mr. Livingston expressed to me his surprise that Dr. Baumann had written a letter commenting on Ms. Romero's medical condition to the Lowe's attorney, given the fact that neither Mr. Fujimoto nor Dr. Baumann had been authorized to discuss Ms. Romero's medical condition or treatment.  Mr. Livingston also expressed his concern that the substance of the letter was unclear.

6.  Mr. Livingston asked me to call Dr. Baumann to determine: (1) what she had discussed with Mr. Fujimoto; (2) what she had been asked by Mr.

Fujimoto to do; (3) whether she had in fact written the letter; and (4) if so, what she had intended to communicate in the letter.

7. The following morning I made two calls to the Emory Pain Management Center in Atlanta where Dr. Baumann works, leaving messages stating that I was seeking to speak with Dr. Baumann regarding the letter to Mr. Fujimoto. I identified myself as an employee of the Honolulu law firm that represents Ms. Romero in litigation arising out of the injuries that resulted in Ms. Romero's back surgery performed in 2003.

8. On my third call I finally reached the reception desk for the Pain Management Center and repeated the purpose of my call. The receptionist had reviewed my prior voice mails and quickly transferred me to a Ms. Jeanette Ramos who identified herself as Dr. Baumann's clinical case coordinator. Ms. Ramos immediately informed me that she had reviewed my voice mail messages and knew the purpose of my call.

9. Ms. Ramos related the following in response to my request to arrange a time to speak with Dr. Baumann:

   a. I would not be allowed to speak with Dr. Baumann on any issue, gratuitously adding that Dr. Baumann did not have time to get involved in "frivolous lawsuits"(all quoted language is the actual language used by Ms. Ramos).

3

  b. Mr. Fujimoto had called some days before but had not been allowed to speak with Dr. Baumann. He had spoken with Ms. Ramos only.

  c. Mr. Fujimoto requested that Dr. Baumann schedule a deposition in which Dr. Baumann would provide testimony regarding her care and treatment of Ms. Romero.

  d. Ms. Ramos told Mr. Fujimoto that Dr. Baumann was too busy treating patients to attend a deposition. She then asked Mr. Fujimoto whether a written statement from Dr. Baumann would eliminate the need for Dr. Baumann to be deposed.

  e. Mr. Fujimoto agreed that he would accept a written statement from the doctor in lieu of her deposition.

  f. Mr. Ramos stated that the letter had been "vetted" by the Clinic's "legal department" before it was sent to Mr. Fujimoto.

  g. In response to my questions about what she had intended the letter to communicate, Ms. Ramos told me that the statements in the letter in no way constituted a medical opinion by Dr. Baumann. She stated that the letter was only intended to communicate that Dr. Baumann had not seen Ms. Romero enough times to be able to form an opinion as to the cause of Ms. Romero's condition.

      h.     Ms. Ramos became openly hostile near the end of our conversation, and commented that "this clinic doesn't have time to waste on frivolous lawsuits."

      i.     At no point did I discuss with Ms. Ramos the nature of the claims or defenses in this lawsuit. Ms. Ramos refused to explain why she understood Ms. Romero's lawsuit to be "frivolous."

I swear under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of February, 2006 at Honolulu, Hawaii.

*/s/ James C. Martin*
James C. Martin